STATE of Missouri, Respondent,

v.

Estus Calvin CROKA, Sr., Appellant.

No. WD 35764.

Missouri Court of Appeals,
Western District.

April 23, 1985.

Motion For Rehearing and/or Transfer
to Supreme Court Overruled and
Denied May 28, 1985.

Application to Transfer
Denied Aug. 7, 1985.

Roy W. Brown, Bruce B. Brown, Brown & Brown, Kansas City, for appellant.

T. Chad Farris, Asst. Atty. Gen., Jefferson City, for respondent.

Before CLARK, P.J., and SOMERVILLE and KENNEDY, JJ.

CLARK, Presiding Judge.

Estus Calvin Croka, Sr. was convicted by a jury of second degree murder and a sentence of 29 years imprisonment was imposed. On this appeal, Croka contends that his conviction should be reversed because the evidence of corpus delecti was insufficient, a prejudicial exhibit was erroneously admitted in evidence over objection, there was an error in a verdict directing instruction and defense counsel's examination of a witness was improperly restricted. The judgment is affirmed.

This is the second trial of Croka on this charge, a prior conviction having been reversed because of prejudicial voir dire remarks by the prosecutor and because of a potential conflict of interest. *State v. Croka*, 646 S.W.2d 389 (Mo.App.1983). The evidence at the second trial must be recounted in brief because of Croka's challenge to the sufficiency of proof of the corpus delecti. The evidence will be stated in the light most favorable to the verdict for conviction. *State v. Overkamp*, 646 S.W.2d 733 (Mo.1983).

The offense was committed April 7, 1979 at about 9:00 p.m. at the home of the victim, Raymond Hemme. Present with Hemme at the time were Betty Jean Miller, appellant's estranged wife, and Jo Anne Van Deren, Mrs. Miller's daughter. According to Mrs. Van Deren, who testified for the state, appellant came to the Hemme house carrying a rifle and demanded to be admitted. When Van Deren opened the door, appellant went directly to a chair where Hemme was seated and after saying, "Gus, I told you I'd kill you one way or another," appellant discharged the rifle into Hemme's chest.

Mrs. Miller sought to dissuade appellant from further violence by grabbing his arm and pushing at the rifle as appellant attempted to reload the weapon. The gun apparently was jammed. Saying, "If I can't shoot you I'll beat you to death," appellant struck Mrs. Miller twice with the barrel of the rifle. After further entreaties by Mrs. Miller, appellant laid the gun aside and went out the door. The sheriff was called and when he and an officer arrived, appellant told them, "I just shot the son-of-a-bitch and I hope he's dead."

Upon entering the house, the sheriff found Hemme seated in the chair. The rifle was leaning against the wall and a spent cartridge was on the floor. The sheriff checked Hemme for vital signs and found neither pulse nor heartbeat. An ambulance was called and Hemme's body was removed. Appellant was taken into custody and transported to the Saline County Jail. Under interrogation, Croka made the following statement:

"At about 8:50 p.m., I left my trailer at Hopkins' Trailer Court, and went across old Highway 240 to Raymond Hemme's house, and knocked on his door, and told him to let me in. My wife let me in. As I went in, Hemme laughed at me. I shot him point blank. Then I tried to reload because I was going to kill my wife, but the gun jammed, and I couldn't reload. Betty Peterson called the police. I then

went outside and waited for the police to arrive. I killed him and would do it all over again, and I would have killed her if the gun had not jammed."

Appellant's first two points are interrelated and, as we perceive them, assert the proposition that the state failed to prove the shot fired by appellant into Hemme's chest caused his death. This contention relies on the failure by the state to call any medical witness to testify concerning the cause of death and the further claim that the death certificate, showing the cause of death to have been cardiac arrest from a gunshot, was erroneously admitted as a state's exhibit. Appellant also directs attention to the testimony by Mrs. Van Deren that Hemme made no outcry before he was shot and did not move from his chair as appellant entered the room with the rifle pointed at him. The suggestion is made that the state's proof did not show beyond a reasonable doubt that Hemme was not already dead as a result of natural causes before the shot was fired.

■ The rule is that expert testimony from a physician is not required in all cases to prove the cause of death. Circumstantial evidence may be sufficient if the facts in evidence are such that every person of average intelligence would know that the wound was mortal in character. *State v. Ricks*, 642 S.W.2d 375, 377 (Mo.App.1982). Here, when the state is given the benefit of all favorable evidence and inferences and all contrary evidence is disregarded, *State v. Overkamp, supra,* the following evidence was pertinent to show the cause of death.

■ The rifle was discharged at Hemme by appellant at point-blank range and thereafter Hemme did not move. Immediately before the shot was fired, Hemme laughed at appellant, an act apparently taken by appellant as provocation. Within minutes after being shot by appellant, Hemme's body was examined by the sheriff who found no signs of life. The death certificate signed by the county coroner showed the cause of death to have been gunshot. This evidence was sufficient to demonstrate to a person of average intelligence that the shot fired by appellant was the cause of Hemme's death.

The facts recited above do differ from those in *State v. Ricks, supra,* in that there, the coroner testified describing the wounds and expressing his opinion that a gunshot was the cause of death. Here, evidence of the coroner's findings came only from the death certificate because the coroner was not called to testify. This leads to the second branch of appellant's argument. He says the death certificate should not have been admitted in evidence because it was not filed within three days of the occurrence, § 193.130, RSMo.1978, because it did not have probative value and because the conclusion as to the cause of death was not based on an autopsy and no inquest was conducted. He also argues that the death certificate raised only an inference and was insufficient to carry the state's burden of proof.

■ As to the date of filing the death certificate, the document shows it was received by the registrar on April 11, 1979. The date of the homicide was April 7, 1979, a Saturday. Under Rule 20.01(a), in computing a period of time prescribed by statute when the period is less than seven days, Saturdays, Sundays and legal holidays are excluded. Thus, when the death certificate here was filed on the Wednesday following the Saturday event, it was timely.

■ The question of whether the death certificate had probative value is in part resolved by reference to § 193.170, RSMo. 1978. By legislative directive, a death certificate is prima facie evidence of the facts stated therein, here, death caused by gunshot. The fact that no autopsy was performed and no inquest was held would, at most, go to the credence of the opinion. Unlike the cases relied on by appellant, the cause of death as set out in the death certificate was reinforced by all the other evidence in the case so that the certificate was not the sole proof of the conclusion. Moreover, no evidence in the case present-

ed any inconsistency with the opinion set out in the certificate. It is sheer conjecture to speculate that Hemme died from some other cause. The death certificate, taken with all the other evidence in the case as to the events which occurred on April 7, 1979, constituted substantial evidence that Hemme died as a result of the gunshot fired by appellant. *Matter of Estate of Viviano,* 624 S.W.2d 130, 133 (Mo.App. 1981).

The fact that the coroner did not appear as a witness for the state to narrate the contents of the death certificate he had prepared, and be cross-examined on the subject, does not disqualify the death certificate as a record entitled to admission in evidence. Section 193.170, RSMo.1978 imposed no condition of live testimony by the preparer or custodian of the document as a prelude to admitting the certificate in evidence. Nor does the admission of the certificate without more deprive appellant of a constitutional right to confront the witnesses against him, as he now contends. Where the statutes have designated particular records as competent evidence to be received as proof of the facts stated therein, the admissibility of the record is not affected by the absence of the record's author. *State v. Simpson,* 625 S.W.2d 957, 959 (Mo.App.1981). The trial court did not err in admitting the death certificate in evidence. The death certificate, coupled with all the other evidence described above, was sufficient if believed by the jury to prove beyond a reasonable doubt that the victim was slain by the rifle charge which appellant fired.

Appellant next complains of error in the state's verdict directing instruction. The point is best identified by setting out the applicable paragraph of MAI–CR2d 15.-14 and the comparable paragraph taken from the instruction as given:

MAI–CR2d—"Fourth, that the death of [name of victim] was not (a justifiable homicide) (an excusable homicide) * * * as submitted in (Instruction No.) * * * "

Instruction No. 5 "Fourth, that defendant is not entitled to an acquittal as

submitted in Instruction No. 7 or Instruction No. 9 * * * "

Instruction No. 7 submitted the defense of excusable homicide and Instruction No. 9 the defense of intoxication. Appellant claims the instruction given in a form deviating from MAI–CR2d presumptively constitutes error and that the error should be judicially determined to be prejudicial. Without retreating from the proposition that the burden is on the state to demonstrate the deviation not to have been prejudicial, appellant argues that the instruction was a misstatement of the law. The intoxication defense offered in Instruction No. 9 would not entitle appellant to an acquittal but would subject him to conviction on a lesser charge of homicide.

We are persuaded that the error in the verdict Instruction No. 5 was a technical oversight which worked no actual prejudice on appellant. The situation in this case where both the defense of excusable homicide and the mitigating circumstance of intoxication, were offered was apparently not considered in drafting pattern instruction MAI–CR2d 15.14. The trial court was cognizant of the necessity to include the jury's rejection of both defenses as a precondition to conviction for second degree murder, but the pattern instruction gives no guide as to how the situation should be handled. In retrospect, use of the word acquittal appears to be inappropriate as explanatory of the consequence were the jury to accept the defense of intoxication. When all of the instructions are considered together, however, it is apparent the acquittal to which Instruction No. 5 refers is only an acquittal of second degree murder. The offense of manslaughter was separately submitted in Instruction No. 6 and there, the defense of intoxication, which would have no bearing on that charge, was not mentioned. The jury was informed by the several instructions on the subjects that if the intent requisite to a conviction for second degree murder was absent because of appellant's intoxicated condition, they should acquit appellant of that charge but should then proceed to consider the lesser

offense of manslaughter. Any other interpretation unjustifiably assumes the the jury entirely ignored the manslaughter instruction and the evidence appropriate to a verdict on that charge.

We are not unmindful of the possibility that the interpretation which appellant placed on Instruction No. 5 could have been conveyed to the jury by argument or otherwise, albeit improperly. The record has therefore been examined with particular care to ascertain if there was any actual basis for appellant's apprehension. There was none. The state made no argument and no inference was raised that acceptance of the intoxication defense would, on that account alone, cause appellant to be released without punishment.

Under all the circumstances of the case, we do not find any prejudice suffered by appellant as a consequence of the wording used in Instruction No. 5. In the first place, it is by no means clear that the instruction amounted to an impermissible modification of or deviation from MAI–CR2d. See *Notes On Use* MAI–CR2d 3.30.2 and 2.04. Assuming that it was, however, the cross-reference to the special negative defense of intoxication coupled with the instruction on excusable homicide was not prejudicial to appellant.

■ In the final point, appellant contends that the trial court erred in denying him the opportunity to impeach witness, Betty Miller, who it is to be recalled, was appellant's estranged wife. The point arose in this manner. In the first trial of appellant, Betty Miller was called and testified for the state. She was not, however, called by the state in the second trial. Appellant as a part of his case in chief sought to read to the jury portions of a deposition given by Betty Miller to compare those statements with testimony she gave at the first trial to show inconsistency. The court denied the request. Appellant then sought to call Betty Miller and employ the same means to cross-examine her as a hostile witness. This request was also denied. Appellant ultimately called and interrogated Betty Miller as his own witness. These rulings are claimed by appellant to have been in error because he was thereby denied his Sixth Amendment right of confrontation.

■ The point lacks any merit for the obvious reason that until appellant himself called Betty Miller, she was not a witness in the case at all. A defendant has no right to confront a witness who gives no evidence at trial. *State v. Rife*, 619 S.W.2d 900 (Mo.App.1981).

Other subsidiary points argued in conjunction with the points discussed above have been considered and have not been found to justify granting any relief to appellant.

The judgment is affirmed.

All concur.