**STATE of Missouri, Respondent,**

v.

**Dennis BAKER, Appellant.**

**Dennis BAKER, Appellant,**

v.

**STATE of Missouri, Respondent.**

Nos. 59613, 61437.

Missouri Court of Appeals,
Eastern District,
Division Four.

July 6, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 9, 1993.

Application to Transfer Denied
Sept. 28, 1993.

William J. Swift, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Hugh L. Marshall, Asst. Atty. Gen., Jefferson City, for respondent.

CARL R. GAERTNER, Judge.

Defendant was found guilty by a jury of first degree murder and two counts of first degree assault with serious physical injury. He was sentenced by the court as a prior and persistent offender to life imprisonment without possibility of parole on the first degree murder charge, to run consecutively with two concurrent ten-year terms on the first degree assault charges. Defendant appeals from these convictions and from the denial of his Rule 29.15 motion. We affirm in part and reverse in part.

■ We view the evidence in the light most favorable to the verdict.

On January 17, 1990, a group of youths gathered in an alley behind the 4700 block of Emily in St. Louis. Defendant drove his car into the alley, and he and a passenger exited the car and spoke with the youths. After a few minutes, Byron Scott approached the group and asked defendant if his name was Pete and whether he had robbed his nephew. Defendant pulled out a gun and started shooting. Byron Scott was shot in the face and died at the scene. D.C. was shot in the shoulder and T.G. was shot in the leg as he tried to run away.

## I. CROSS–EXAMINATION OF THE JUVENILE WITNESSES

In his first point, defendant argues the court erred by refusing to allow him to cross-examine the two juvenile victims about their criminal records. The two juvenile victims, T.G. and D.C., were arrested in the months between the shooting and defendant's trial. T.G. was arrested for first degree tampering on September 14, 1990. The charge was dismissed for insufficient evidence on September 17, 1990. T.G. had no other charges pending before trial. D.C. was arrested for disturbing the peace on October 2, 1990. This charge was dis-

missed as well, although the date of disposition is in question. A computer printout of his case history shows it was formally disposed of on December 4, 1990, the date defendant's trial began. However, a report of a social worker in a later matter states that the disturbance occurred on October 9 and no action was taken on October 15, 1990. D.C. had no other charges pending before trial.

■ Defendant argues that the State's interest in protecting the records of juveniles must give way to his need to expose possible bias in the witnesses. The Sixth Amendment right of an accused to confront witnesses against him also includes the right to cross-examine those witnesses. *Davis v. Alaska*, 415 U.S. 308, 315, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974). A cross-examiner may impeach the credibility of a witness to reveal bias, prejudice, or ulterior motives as they relate to the issues or personalities in the case at hand. *Id.* at 316, 94 S.Ct. at 1110. The right to cross-examine is not without its limits. Cross-examination is subject to the broad discretion of the trial judge to preclude repetitive and unduly harassing interrogations. *Id.* at 316, 94 S.Ct. at 1110. Generally, the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent the defense might wish. *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 294, 88 L.Ed.2d 15 (1985).

The facts of *Davis* relate closely to the case at bar. Davis was accused of the burglary of a bar in which the bar's safe was removed. Richard Green saw Davis, holding a crowbar, and another person parked by the road near Green's home where the safe was eventually found. Green, a witness at trial, was on probation from the juvenile court after being adjudicated delinquent in the burglaries of two cabins. The prosecution moved to prevent any reference to Green's juvenile record on cross-examination. Defendant argued that he wanted to show that Green's identification and testimony were motivated by his fear and concern that police would suspect

him as the burglar and thereby endanger his probation. The trial court denied defendant the right to question Green on his juvenile record pursuant to a court rule and state statute making evidence of juvenile proceedings inadmissible.

The United States Supreme Court held that the defendant's right to cross-examine the witness for bias and influence outweighed Alaska's interest in protecting the anonymity of juvenile offenders. *Davis*, 415 U.S. at 320, 94 S.Ct. at 1112. The excluded cross-examination was admissible to allow the defendant to develop an inference of Green's bias because of Green's vulnerable status as a probationer or his concern that he might be a suspect in the investigation. *Id.* at 317–18, 94 S.Ct. at 1111. The court refused to speculate as to whether the jury would have believed that Green's identification and testimony were motivated by a fear that his probation might be endangered. *Id.* at 317, 94 S.Ct. at 1111. Nevertheless, the court held that the jury was entitled to have that information to decide what weight to place on Green's testimony. *Id.*

The Missouri Supreme Court noted the limitations of *Davis* in *State v. Russell*, 625 S.W.2d 138 (Mo. banc 1981). The *Russell* court interpreted *Davis* to allow a defendant to prove bias which could result from a juvenile witness's motive to lie because he is a suspect and subject to control of the juvenile authorities. 625 S.W.2d at 141. The *Russell* court found that *Davis* did not hold that a court must permit the general credibility of a juvenile to be attacked by a record of a juvenile adjudication or by unrestrained cross-examination concerning such adjudication or acts of misconduct. *Id.* The court noted,

> The rehabilitative and protective purpose of the juvenile court system and public policy of this State providing confidentiality concerning juvenile offenses are factors which must be weighed in the necessity for permitting and the extent of cross-examinations of juveniles. Such considerations will involve not only the factors relative to cross-examination of an adult, but will also involve elements

particularly appropriate to a juvenile witness such as the circumstances of his misconduct, his subsequent misconduct, and the age, understanding and the background of the juvenile as they bear upon the probative value of the act of misconduct to impeach the juvenile.

*Russell*, 625 S.W.2d at 142.

In *State v. Joiner*, 823 S.W.2d 50, 53 (Mo.App.1991), this court held that while the extent of cross-examination is within the discretion of the trial court, the court may not wholly exclude evidence of the witness's status regarding pending charges against him brought in the name of the same prosecutor. The right to cross-examine did not depend on the existence of a deal since the witness might perceive a possible benefit in testifying favorably for the State. However, the court distinguished between a witness influenced by pending or threatened charges and a witness whose case is no longer pending at the time of trial since "there can be no hope of favorable treatment in a case previously disposed of." 823 S.W.2d at 53.

Defendant's counsel requested the juvenile records of T.G. and D.C. prior to trial. The State filed a motion in limine to exclude the records of the juveniles. The court and counsel viewed the record in camera. Defendant's counsel deposed the two juveniles and was allowed by the court to voir dire the juveniles on their records. Defense counsel conducted a voir dire examination of T.G. but did not inquire about the status of his juvenile record.

■ Based upon the record before us, we find no error in the exclusion of evidence regarding the juveniles' records. We consider a number of factors in this decision. First and foremost, both juveniles were victims of the crime defendant was charged with and therefore unlikely to testify in expectation of leniency or to divert suspicion from themselves. Second, by all accounts, neither juvenile had any proceedings pending against him in juvenile court at the time of trial. Defendant's claim that one of the juvenile's matter was disposed of on the day of trial is disputed by another record which says it was disposed of two

months prior. Third, defendant offers no proof that any deals were made or that juveniles had any expectations of leniency in testifying against defendant despite opportunities to voir dire and depose the juveniles. The trial court gave defendant every opportunity, short of testimony before the jury, to demonstrate the purported bias to the court. The court may deny defendant the ability to use the juvenile proceedings to make a general attack on the credibility of the two juveniles. *Russell*, 625 S.W.2d at 141. The court did not abuse its discretion in refusing to allow defendant to cross-examine the juveniles on their records. Point denied.

## II. ADEQUACY OF NOTICE FOR A PCR DEPOSITION

■ Defendant next claims the State's failure to give proper notice of a deposition was prosecutorial misconduct. He further claims that the use of the deposition at trial was error which resulted in the improper denial of his Rule 29.15 motion. Defendant's counsel deposed three witnesses in West Memphis, Arkansas as part of defendant's post-conviction motion claim that trial counsel was ineffective for failing to call three alibi witnesses. At the deposition, the prosecutor notified defendant's counsel that he would depose an investigator, Mr. Morgan, who interviewed the three deposed witnesses. The deposition transcript denotes that the deposition of the three witnesses took place at 9:00 a.m. and the deposition of Mr. Morgan took place at 10:30 a.m. at the same place and before the same court reporter. The prosecutor called Judge Robert Dierker, then criminal assignment judge, to obtain permission to depose Mr. Morgan on shortened notice pursuant to Rule 57.03(b)(2). Judge Dierker granted the request. Defendant objected to the deposition and to its use at the 29.15 hearing.

A 29.15 hearing is a civil proceeding, and discovery in that matter must follow the rules applicable to civil procedure. Rule 29.15(a). Both parties base their arguments on the notice provision of Rule 57.03(b)(1) and (2). Rule 57.03(b)(1) provides

that a deposition may be taken with seven days notice to the parties, but Rule 57.03(b)(2) allows the court to enlarge or shorten the time for taking a deposition. The State argues Judge Dierker's grant of a deposition on shortened notice was proper, while defendant counters that Judge Dierker, as criminal assignment judge, could not give shortened notice on a civil matter.

■ Neither party has briefed the application of Rule 57.03(b)(5) to this issue. Rule 57.03(b)(5) provides that a party may take a deposition before the same court reporter immediately after or on the next day after a deposition called by another party. The party desiring to conduct a deposition must give written notice to the original party either before or during that party's deposition. Since neither party briefed the applicability of this rule, we are unaware of whether the prosecutor complied with the written notice provisions of Rule 57.03(b)(5). The record does show the prosecutor gave at least oral notice of his intention to take the witness's deposition. Moreover, Judge Dierker is a duly qualified circuit judge. The fact that he may from time-to-time be assigned to a division of the circuit devoted to criminal trials, in no way impairs his authority to rule upon Rule 29.15 motions even though such motions are governed by the Rules of Civil Procedure. The motion court is vested with wide discretion in administering the rules of discovery and in using depositions in court. *Patton v. May Dept. Stores Co.,* 762 S.W.2d 38, 41 (Mo. banc 1988); *Kunzler v. Estate of Kunzler,* 598 S.W.2d 139, 145 (Mo. banc 1980). We find no misconduct on the part of the prosecutor, nor any error by the motion court in accepting the deposition of Mr. Morgan.

■ Furthermore, the motion court did not err in denying defendant's Rule 29.15 motion. On appeal of a 29.15 motion, we are limited to a determination of whether the findings and conclusions of the motion court are clearly erroneous. Rule 29.15(j). The motion court found that defendant's trial counsel was not ineffective for failing to call the three alibi witnesses. Those witnesses all gave conflicting accounts of when and how long defendant was in West Memphis, Arkansas. The trial court correctly concluded that the testimony of these witnesses would not have altered the outcome of the trial. We find no clear error on the part of the motion court. Point denied.

## III. SUFFICIENCY OF SERIOUS PHYSICAL INJURY EVIDENCE

■ In point three defendant argues the evidence was insufficient to convict him of the Class A felony of first degree assault because there was no evidence that T.G. and D.C. suffered serious physical injuries. On a challenge to the sufficiency of the evidence, the evidence together with all reasonable inferences is viewed favorably to the verdict and evidence or inferences contrary to the verdict are ignored. *State v. White,* 798 S.W.2d 694, 697 (Mo. banc 1990).

Section 565.050 RSMo.1986 provides:

1. A person commits the crime of assault in the first degree if he attempts to kill or knowingly causes or attempts to cause the serious physical injury to another person.

2. Assault in the first degree is a Class B felony unless in the course thereof the actor inflicts serious physical injury on the victim in which case it is a Class A felony.

The evidence in the case was sufficient to convict defendant on both counts of first degree assault because the evidence and all reasonable inferences leads to the conclusion that he attempted to kill or attempted to cause serious physical injury to the victims. Defendant maintains, however, that the evidence was insufficient to support a finding that he actually inflicted a "serious physical injury" on either of the two victims as required to raise the offense from a Class B to a Class A felony.

"Serious physical injury" is defined as "physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body",

§ 565.002(6) RSMo.1986, and was so defined in the instructions submitted to the jury. "Physical injury" is defined as "physical pain, illness, or any impairment of physical condition." Section 556.061(20) RSMo.1986.

Defendant's sole authority for his contention that the evidence was insufficient to establish serious physical injury to either victim is an isolated quotation from *State v. Adams*, 808 S.W.2d 925 (Mo.App.1991):

> The question is whether the injuries inflicted in the assault, viewed objectively, are of a degree of severity to raise a legitimate concern that the victim could expire or could suffer more than a momentary loss of a bodily function.

808 S.W.2d at 931–32 (quoting *State v. Johnson*, 770 S.W.2d 263, 265–66 (Mo.App. 1989)). Defendant seizes upon this language as establishing the definitive construction of § 565.002(6) as to what must be shown to establish serious physical injury: either (1) injury of sufficient severity to establish a legitimate concern that the victim could expire, or (2) evidence of more than a momentary loss of bodily function.

■ Defendant misstates the holding of *Adams*. The sole issue under consideration in the passage in *Adams* cited by defendant (and in *Johnson*, from which the court was quoting in *Adams*) was whether the evidence was sufficient to support a finding that the injuries inflicted were sufficiently severe to raise a legitimate concern that the victim could expire—*i.e.*, whether, in the language of § 565.002(6), the injuries created a "substantial risk of death." *See Adams*, 808 S.W.2d at 931–32; *Johnson*, 770 S.W.2d at 265–66. In both cases, the evidence was held sufficient to support such a finding and the convictions were affirmed. *Id.* The courts' references to "loss of bodily function" were simply convenient references to the balance of the grounds for a finding of "serious physical injury," which were not at issue in either

case and therefore properly distinguished from the issues being addressed. Thus, the courts' references in *Adams* and *Johnson* to "loss of bodily function" are dicta and cannot be read as precedent for defendant's proposition that "loss of bodily function" is the *only* other finding that will support a finding of "serious physical injury." In fact, an examination of the plain and unambiguous language in § 565.002(6) reveals that there are four potential findings sufficient to satisfy the statutory definition of "serious physical injury:"

(1) physical injury that creates a substantial risk of death; *or*

(2) physical injury that causes serious disfigurement; *or*

(3) physical injury that causes protracted loss of the function of any part of the body; *or*

(4) physical injury that causes protracted impairment of the function of any part of the body.

■ The State does not dispute defendant's contention that the evidence was insufficient to support a finding that the injuries inflicted either created a substantial risk of death or caused protracted loss of function. Rather, the State maintains the evidence supported a finding that the injuries to T.G. and D.C. caused protracted "impairment" of the function of a part of the body.[1] Words used in a statute are to be given their plain and ordinary meaning. *State v. Rellihan*, 662 S.W.2d 535, 545 (Mo.App.1983). Webster's defines "impairment" as "damage, injury or deterioration." *Webster's New Twentieth Century Dictionary* (2d Ed.1983). Such definition comports with the common usage of the term and may properly be distinguished from "loss" of function inasmuch as the terms are used disjunctively in § 565.-002(6). With this distinction in mind, we examine the evidence of "impairment" separately for each victim.

---

1. In his Reply Brief, defendant does not answer this contention and instead asserts, for the first time, that medical testimony is required to prove the element of "serious physical injury." Points of error set forth for the first time in a reply brief present nothing for appellate review.

*Wilmer v. O'Donnell*, 637 S.W.2d 757, 764 (Mo. App.1982). Exercising our discretion to review the point *ex gratia* as an assertion of plain error, we find it to be without merit. *State v. Keenan*, 779 S.W.2d 743, 744–45 (Mo.App.1989).

At trial, D.C. testified that he was shot in the shoulder. D.C.'s testimony with respect to the severity of the injury was as follows:

Q. Is that giving you any problems to-day?

A. Yes.

Q. What kind of problems?

A. Stiffness.

Q. Stiffness?

A. Yes.

The trial in this case was held some eleven months after the shooting. Thus, the foregoing testimony would support a finding that the injuries inflicted upon D.C. were protracted [2] and impaired a part of his body—*i.e.,* his shoulder. A stiff shoulder is a damaged, injured or deteriorated shoulder. The closer question is whether D.C.'s testimony supported a finding that the injury caused a protracted impairment of the *function* of his shoulder. Although the foregoing testimony is deplorably meager as to this aspect of the statutory criterion, we believe that the jury could fairly infer from D.C.'s testimony that protracted stiffness in the shoulder constitutes an impairment of the shoulder's function. Stiffness is commonly understood to be a condition which is experienced upon movement, not at rest. Inasmuch as the shoulder's function is to facilitate movement of the arm, an injury that produces continuing stiffness in the shoulder can properly be characterized as an injury that causes "protracted … impairment of the function" of a part of the body within the meaning of § 565.002(6). We therefore reject defendant's challenge to the sufficiency of the evidence to support the jury's verdict with respect to defendant's assault upon D.C.

In contrast, the evidence adduced by the State with respect to the injury inflicted on T.G. does not support an inference that the injury caused any protracted impairment of function. T.G. was shot in the left calf. The sole evidence even remotely bearing on the severity of the injury to T.G. was the following question and answer on direct examination:

Q. Do you suffer any problems with that leg wound today?

A. When it's cold or rainy, I get aches.

Such evidence, standing alone, does not support an inference the injury caused protracted impairment of the *function* of T.G.'s leg. The function of the leg is ambulation and/or support while standing. In contrast to the continuing stiffness related by D.C., aches experienced during cold and damp conditions may be as likely experienced at rest as they would be when the leg is performing its normal function. There is no indication that the aches are either affected by movement or standing or that the aches reported by T.G. make moving or standing on the leg more difficult. Accordingly, we find that the State failed to produce evidence sufficient to establish a serious physical injury to T.G. Defendant's conviction for Class A assault in the first degree upon the victim T.G. must therefore be reversed.

## IV. SUFFICIENCY OF THE EVIDENCE TO SHOW THE CORPUS DELICTI

Defendant next argues that the evidence was insufficient to establish the gunshot wound as the cause of Byron Scott's death. Again, we review the evidence and the inferences in the light most favorable to the verdict. *White,* 798 S.W.2d at 697. The corpus delicti in a homicide case consists of a person's death and the criminal agency of another. *State v. Vincent,* 785 S.W.2d 805, 810 (Mo.App. 1990). All of the elements of a homicide case including the corpus delicti may be proved with circumstantial evidence. *Id.* In *Vincent,* photographs of the victim's body, references to the victim as "dead," and defendant's admission that he fired a shot which wounded the victim were sufficient to establish the corpus delicti. 785 S.W.2d at 810. In *State v. Croka,* 693 S.W.2d 133, 135 (Mo.App.1985), testimony established that defendant shot the victim

2. Protracted loss or impairment means something short of permanent but more than a short duration. *State v. Stewart,* 811 S.W.2d 805, 808 (Mo.App.1991).

at point blank range after which victim did not move and the sheriff found no signs of life. The court held that the testimony and the coroner's report were sufficient to establish the corpus delicti. *Id.*

Here the testimony of the witnesses was sufficient to establish the corpus delicti. T.G. testified that defendant shot Scott. T.G. later gave the following description of a photo of Scott at the scene.

Question: Let me show you what has been marked as State's Exhibit #3 and ask you if you can tell me what it is?

Answer: That's Byron, shot.

Question: And could you describe, when you say Byron, could you describe the position in which he is there.

Answer: Dead, shot.

Later, Byron Scott's mother identified a morgue photo of Byron. Her testimony also included references to the last time she saw him alive and an event that "happened before Byron got killed". Finally, D.C. testified that defendant shot Byron Scott in the face. This was sufficient evidence for a jury to infer that Byron Scott died from a gunshot wound inflicted by defendant. Point denied.

## V. BATSON CHALLENGE

Defendant next argues that the trial court erred in accepting the prosecutor's race neutral explanation for the removal of a venire person. The prosecution used six of its seven peremptory challenges against black venire persons. Defendant raised a *Batson* [3] challenge and the prosecutor offered race neutral explanations for the exercise of his peremptory challenges. Defendant appeals the State's exercise of a peremptory challenge against a venire person who expressed sentiments that he would not want to be a witness to a crime. The prosecutor explained that he felt the excluded venire person would not be oriented towards law enforcement. The trial court accepted the prosecutor's explanation.

Once a defendant raises a *Batson* challenge, the State must come forward with reasonably specific and clear race neutral explanations for the strike. *State v. Parker*, 836 S.W.2d 930, 939 (Mo. banc 1992). If the prosecutor is able to articulate an acceptable reason for the strike, the defendant must then show that the State's proffered reasons for the strikes were merely pretextual and the strikes were racially motivated. *Id.*

The trial court takes into account a variety of factors in determining whether the defendant has carried the burden of proof and established the existence of purposeful discrimination. The chief consideration is the plausibility of the prosecutor's explanation in light of the totality of the facts and circumstances surrounding the case. The other factors considered are the existence of similarly situated white jurors who were not struck; the logical relevance between the prosecutor's explanation and the case in terms of the charge, the evidence to be adduced and the potential punishment; the prosecutor's demeanor or statements during voir dire as well as the demeanor of the excluded venire persons; the court's past experience with the prosecutor; prevailing conditions in the community; and the race of the defendant, victims, and witnesses. *Parker*, 836 S.W.2d at 940. The trial court's determination regarding purposeful discrimination remains a finding of fact that will not be overturned on appeal unless clearly erroneous. *Id.* at 939, n. 7. Clearly erroneous means the reviewing court is left with a definite and firm conviction that a mistake has been committed. *State v. Robinson*, 844 S.W.2d 85, 86 (Mo.App.1992).

During voir dire, the venire person in question shook his head when asked if he had ever been a witness to a crime. During further questioning, the prosecutor tried to elicit whether the venire person would not want to be a witness if he saw a crime. The venire person's response to every question was that he had not seen anything or had never been a witness. The

---

3. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

answers were unresponsive to the questions posed by the prosecutor. The prosecutor gave the following explanation for the strike:

> [Venire person] indicated when Ms. Caradonna asked if he was ever a witness and he shook his head rather animatedly, much more so than he's done anything throughout the voir dire that I've observed. And when I questioned him about it, he said he did not want ever to be a witness. He was rather strong in his statement in not wanting to be a witness, to me, suggests—and he's the only person I saw and he's the only person that responded in that way—and that suggests to me that a person who would not want to be a witness would not be oriented towards law enforcement that requires witnesses.

Examining this case under the factors outlined in *Parker* we find no clear error on the part of the trial court in accepting the prosecutor's explanation. The prosecutor's explanation was plausible in light of the fact that the State's case relied almost entirely on eyewitness testimony, and we defer to the trial court's opportunity to observe the demeanor of both the prosecutor and the excluded venire person. We find nothing to leave us firmly convinced that an error has been committed. Point denied.

## VI. EVIDENCE SUFFICIENT TO ESTABLISH DELIBERATION

Defendant argues that the evidence was insufficient to convict him of first degree murder since the element of deliberation was not established. Again, we view the evidence and inferences therefrom in a light most favorable to the verdict. *State v. Hughes,* 748 S.W.2d 733, 739 (Mo.App.1988). "Deliberation" is found when an act is performed with a cool and deliberate state of mind. *Hughes,* 748 S.W.2d at 739. A deliberate act is a free act of the will done in furtherance of a formed design to gratify a feeling of revenge or to accomplish some other unlawful purpose and while not under the influence of violent passion suddenly aroused

by some provocation. *State v. Dickson,* 691 S.W.2d 334, 339 (Mo.App.1985). It is not necessary that the actor brood over his actions for any appreciable period of time to constitute deliberation. *Id.* The jury may infer deliberation from the circumstances surrounding the homicide. *Id.*

The evidence in the case was sufficient to establish the element of deliberation. The evidence established that defendant drove upon a group of youths in an alley. Defendant got out of the car and was having a discussion with the group when Byron Scott walked up to the group and asked defendant whether he was the one who had robbed his nephew. T.G. testified that defendant responded by drawing a weapon from his back or side and firing. D.C. testified that the first shot hit him in the shoulder and the second shot hit Scott in the face. There is no evidence presented by the State or by the defendant that Byron Scott threatened the defendant. Defendant's evidence presented a defense of alibi and a question of whether he was identified as the shooter. Defendant had to draw the weapon and fire it more than once at more than one victim. This act, though brief, was not provoked and is sufficient to establish deliberation. Point denied.

## VII. THE REASONABLE DOUBT INSTRUCTION

Finally, defendant argues that instruction MAI–CR3d 302.04 defining reasonable doubt and given at trial is unconstitutional because it permitted the jury to convict defendant on a degree of proof below that required by due process. Our Supreme Court has held that this MAI Instruction defining reasonable doubt does not violate a defendant's right to due process and is constitutional. *State v. Griffin,* 818 S.W.2d 278, 282 (Mo. banc 1991). Point denied.

## CONCLUSION

Defendant's conviction in Count I of murder in the first degree is affirmed. Defendant's conviction on Count II of assault in the first degree with serious physical inju-

ry is affirmed. Defendant's conviction on Count III of assault in the first degree with serious physical injury is reversed.

CRANE and CRAHAN, JJ., concur.