STATE of Missouri, Respondent,

v.

Chris WESTERMAN, Appellant.

No. WD 54943.

Missouri Court of Appeals,
Western District.

July 28, 1998.

Craig A. Johnston, Asst. Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Cheryl A. Caponegro, Asst. Atty. Gen., Jefferson City, for Respondent.

HANNA, Presiding Judge.

Chris Westerman was found guilty by a jury of one count of assault in the first degree, § 565.050,[1] and one count of armed criminal action, § 571.015. He was sentenced to consecutive terms of twelve and three years, respectively.

On September 18, 1996, the defendant and his brother were celebrating his brother's birthday at the Silver Spur Saloon in Odessa. They were loud, argumentative, and using profanity. The owner, Ms. Seaman, asked them to quiet down or leave. Ms. Seaman asked Stephen Anderson, the victim, to watch the bar while she went to the restroom. While she was gone, one of the brothers called Ms. Seaman a derogatory name. Anderson asked the Westerman brothers to leave. They left but continued arguing in the parking lot. Anderson went to the parking lot to lock the doors on his truck. As he was locking the passenger door, the defendant's brother threw beer bottles over his

---

1. All statutory references are to the Missouri Revised Statutes, 1994, unless otherwise indicated.

head. A fight ensued. Anderson testified that he was held by the defendant's brother when he felt a "burning" pain in his side and knew that he had been stabbed by the defendant.[2]

On appeal, the defendant contends that there was not sufficient evidence to support the jury's verdict that the defendant inflicted "serious physical injury" as the term is defined by § 565.002(6). The defendant also argues that since the armed criminal action conviction is dependent upon the underlying felony, it should, therefore, be reversed.

In considering this issue, the evidence, along with all reasonable inferences drawn therefrom, is viewed in the light most favorable to the verdict, and all evidence and inferences to the contrary are to be disregarded. *State v. Grim*, 854 S.W.2d 403, 405 (Mo. banc 1993). Our review is limited to a determination as to whether there is enough evidence from which a reasonable juror could find the defendant guilty beyond a reasonable doubt. *Id.; State v. Ross*, 923 S.W.2d 354, 357 (Mo.App.1996).

Section 565.050 provides that "a person commits the crime of assault in the first degree if he attempts to kill or knowingly causes or attempts to cause serious physical injury to another person." The crime of assault in the first degree is categorized as either a class A or B felony. § 565.050. If the state proves that the victim suffered serious physical injury, the crime is enhanced to a class A felony. § 565.050.2. Serious physical injury is defined in § 565.002(6) as physical injury:

(1) that creates a substantial risk of death; or

(2) that causes serious disfigurement; or

(3) that causes protracted loss of the function of any part of the body; or

(4) that causes protracted impairment of the function of any part of the body.

---

**2.** The Westermans kept a cooler containing food, drink, and knives in the bed of their truck, which they were using as a kitchen since the hotel they lived in did not have one. Apparently, the defendant retrieved a "paring knife" from the cooler.

**3.** At trial, the court instructed the jury that the defendant attempted to cause serious physical

*State v. Ross*, 939 S.W.2d 15, 18 (Mo.App. 1997).[3]

The defendant relies on *State v. Nguyen*, arguing that there was insufficient evidence to prove that the victim suffered "serious physical injury," which steps the crime up to a class A felony. 880 S.W.2d 627 (Mo.App. 1994). In *Nguyen*, the only supporting factual basis for serious physical injury was the jewelry store owner's observation that the victim was taken to the hospital "in critical," in an apparent attempt to describe the serious condition of his injury. *Id.* at 631. The state did not offer any testimony or evidence which would support this testimony or establish the victim's condition. *Id.* at 635–36. As a result, the court held that the evidence was insufficient to find that the injuries created a substantial risk of death. *Id.* at 636.

In *State v. Ross*, this court distinguished its facts from those in *State v. Nguyen*. 923 S.W.2d at 357. The victim in *Ross* had a bullet which entered his chest and exited under his armpit. The victim was hospitalized overnight in the intensive care unit. *Id.* In contrast, the *Ross* court observed that in *Nguyen*, "the victim was shot in the hip, rather than the chest, and the record does not reflect that he was admitted to the hospital as a result of his wound." *Id.* The result is that the court held that the victim's injuries were life threatening and, therefore, supported a conclusion of serious physical injury. *Id.*

In comparison, Anderson experienced a burning pain in his side and immediately realized that he had been stabbed. He also saw that there was blood on his shirt and on his pants. He started to feel lightheaded and tried to go back inside of the bar. At that point, Ms. Seaman came to the back door and helped him inside. She drove Anderson to the hospital. The stab wound, located in the upper abdomen area, was ap-

---

injury to Anderson by stabbing him, and that "the term 'serious physical injury' means physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body."

proximately one and a half inches long and one and a half inches deep. The knife penetrated just under the ribs near the liver, penetrating the skin, and the anterior and posterior muscle layers.

Moreover, Dr. Garret Marr testified that the wound was located in "a potentially very lethal area of the body." When the doctor made a general observation of Anderson's wound, he was unable to determine the nature and extent of the penetration of the stab wound, which was in close proximity to the liver. There was testimony that the stomach, the apex of the heart, and the diaphragm are located in close proximity to the wound. It was the physician's judgment that exploratory surgery was necessary. As a result of the surgery, Anderson remained in the hospital until the third or fourth postoperative day. Anderson then visited the doctor, on an outpatient basis, for approximately two weeks. The doctor testified that although the procedure went well, Anderson could not work for six weeks because of the injury.

The defendant maintains that the state does not identify a particular part of the body that was impaired, nor lost, for a protracted time. He also contends that just because Anderson was unable to work for six weeks, does not mean that a bodily function was impaired or lost. He argues that it may have been that Anderson did not work for precautionary reasons due to the dangerous nature of construction work. The state responds that the described injuries show that Anderson suffered either protracted loss, or protracted impairment of the function of a part of his body.

■ A protracted impairment means "something short of permanent but more than of short duration." *State v. Trimmer*, 849 S.W.2d 725, 728 (Mo.App.1993). In *State v. Trimmer*, the court ruled that when the victim suffered pain and loss of sleep for at least one month after the assault, the result was a protracted impairment. *Id.* In *State v. Ross*, two victims were shot, one in the leg and one in the foot. 939 S.W.2d at 17. They could not walk without crutches for approximately one week, and it was one month before the victims could resume normal activ-

ity. *Id.* at 18. The court held that both victims suffered serious physical injury and that the loss of ambulatory function of the foot and leg for several days constituted protracted impairment. *Id.* at 18–19. The victim in *State v. Baker* was shot in the shoulder. 859 S.W.2d 805, 813 (Mo.App.1993). At the time of trial, approximately 11 months after the shooting, he had a "stiffness" in his shoulder. The court held that not only was the injury protracted, but also that it resulted in a protracted impairment of the *function* of the shoulder. *Id.* In contrast, the other victim was shot in the left calf which, he complained, would ache on cold or rainy days. This evidence, standing alone, did not support an inference that the injury created a protracted impairment of the *function* of the leg. *Id.* See also *State v. Kruger*, 926 S.W.2d 486, 489 (Mo.App.1996). The evidence here was that Anderson could not work at his construction job for six weeks because of the injury. That injury amounts to protracted impairment.

■ "There is no minimum degree of trauma that must be inflicted to satisfy the portion of the statutory definition dealing with protracted loss or impairment." *State v. Ross*, 939 S.W.2d at 18 (citing *In Interest of N.A.G.*, 903 S.W.2d 664, 667 (Mo.App.1995)). The mere fact that a victim of an assault recovers without residual damage, does not render proof of serious physical injury insufficient. *State v. Emory*, 643 S.W.2d 24, 27 (Mo.App.1982).

The doctor's evidence was clear that Anderson could not work for approximately six weeks because of the stab wound and resulting abdominal surgery. The knife penetrated the anterior and posterior muscle layers with resulting bruising of the posterior part of the muscle. The tearing and bruising, brought about by the knife wound, caused the protracted loss and impairment of the victim's body. Point denied.

Judgment affirmed.

LAURA DENVIR STITH and EDWIN H. SMITH, JJ., concur.