**STATE of Missouri, Respondent,**

v.

**Sidney LANIER, Appellant.**

No. 72970.

Missouri Court of Appeals,
Eastern District,
Division Four.

Jan. 19, 1999.

**378**

Douglas R. Hoff, Asst. Public Defender, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

GARY M. GAERTNER, Judge.

Appellant, Sidney Lanier ("defendant"), appeals the judgment of conviction for two counts of first degree assault, RSMo section 565.050 (1994),[1] and two counts of armed criminal action, RSMo section 571.015, entered by the Circuit Court of the City of St. Louis after a bench trial. We affirm.

In the light most favorable to the verdict, the evidence established that on March 16, 1996, at approximately 1:30 p.m., several young girls were standing near an apartment building in the City of St. Louis when they noticed a dark car parked in a lot nearby. They decided to walk to a nearby store. While walking, the car pulled up to the young girls. Defendant and his co-defendant, Sydney Dunlap, were in the car. One of them began to talk to one of the girls, S.S., who was only thirteen years old. At this time, Marcus Hill, a friend of S.S.'s older brother, approached the group and told defendant and Dunlap to quit making suggestive remarks to S.S. They began to argue.

Hill left the scene and got S.S.'s brother, Frank Stallworth. Stallworth and Hill continued to argue with defendant and Dunlap. Eventually, the argument broke up and Stallworth and Hill began to walk home. Defendant and Dunlap pulled up next to them and pulled out a gun. They said they would be back and drove away. Hill and Stallworth then went to the apartment complex. About one hour later, Stallworth was walking from his apartment building to the parking lot when he heard a car braking. When he turned around, he saw defendant and Dunlap drive by. Defendant leaned out of the window and fired shots. The bullets hit a pedestrian, Vante Banks, and six-year-old B.L., who was playing nearby. Banks received two gunshot wounds to his leg. B.L. also received a gunshot wound to the leg.

The state charged defendant as follows: (1) Count I, first degree assault for knowingly causing serious physical injury to Vante Brooks by shooting him; (2) Count II, armed criminal action in connection with the shooting of Brooks; (3) Count III, first degree assault for knowingly causing serious physical injury to B.L. by shooting her; and (4) Count IV, armed criminal action in connection with the shooting of B.L. The state also alleged defendant was a prior and persistent offender. After a bench trial, the trial court

---

1. All statutory references are to RSMo 1994 unless otherwise noted.

convicted defendant of all four counts. The court sentenced defendant to terms of fifteen years on both Counts I and II and to terms of thirty years on both Counts III and IV, all to run concurrently.

In his appeal, defendant disputes only the sufficiency of the evidence to support his convictions for Counts III and IV, relating to the shooting of B.L. He does not dispute his convictions for Counts I and II. Defendant contends the state failed to offer sufficient evidence that he inflicted "serious physical injury" to B.L.

■■■ The sufficiency of the evidence in a court-tried case is determined by the same standard as in a jury-tried case. *State v. Sladek,* 835 S.W.2d 308, 310 (Mo.banc 1992). "In reviewing the sufficiency of the evidence, we accept as true all the evidence favorable to the State, including all favorable inferences from that evidence, and disregard all contrary evidence and inferences." *State v. Hunter,* 939 S.W.2d 542, 544 (Mo.App. E.D. 1997). "Our determination is limited to whether there is substantial evidence from which a reasonable trier of fact might have found the defendant guilty beyond a reasonable doubt." *Id.* Further, in a bench-tried case, the trial court's findings have the force and effect of a jury verdict. Rule 27.01.

RSMo section 565.050 provides "[a] person commits the crime of assault in the first degree if he attempts to kill or knowingly causes or attempts to cause serious physical injury to another person." The crime of first degree assault is classified as a class B felony "unless in the course thereof the [defendant] inflicts serious physical injury on the victim...." RSMo section 565.050.2. In that case, the crime of first degree assault is classified as a class A felony. *Id.*

"Serious physical injury" is defined in RSMo section 565.002(6) and RSMo section 556.061(28) as physical injury that: (1) creates a substantial risk of death; or (2) causes serious disfigurement; or (3) causes protracted loss of the function of any part of the body; or (4) causes protracted impairment of the function of any part of the body. *State v. Ross,* 939 S.W.2d 15, 18 (Mo.App. S.D.1997); *State v. Baker,* 859 S.W.2d 805, 812 (Mo.App. E.D.1993). "Physical injury" is defined as "physical pain, illness, or any impairment of physical condition[.]" RSMo section 556.061(20).

■■■ The state tacitly concedes that there was no evidence that the injury to B.L. resulted in a substantial risk of death or serious disfigurement or protracted loss of the function of any part of B.L.'s body. Therefore, this appeal centers on whether sufficient evidence was presented that B.L. suffered a physical injury causing protracted impairment of the function of any body part.

■■■ The words of a statute are to be given their plain and ordinary meaning. *Baker,* 859 S.W.2d at 812. "Impairment" has been defined as " 'damage, injury or deterioration.' " *Id.* (quoting WEBSTER'S NEW TWENTIETH CENTURY DICTIONARY (2d ed.1983)). " 'Protracted' means something short of permanent but more than of short duration." *Ross,* 939 S.W.2d at 18. There is not a minimum degree of trauma which must be inflicted to satisfy the statutory definition of protracted loss or impairment. *Id.* "Whether an injury constitutes protracted impairment depends on the circumstances of each case." *Id.*

Both defendant and the state rely on our decision in *Baker* to support their arguments. In that case, a jury convicted the defendant, Baker, of first degree murder and two counts of first degree assault with serious physical injury, for shooting three separate victims. *Id.* at 808. With regard to the first degree assault convictions, the first victim was shot in the shoulder and testified at trial, approximately eleven months later, that he continued to have stiffness in the shoulder. *Id.* at 813. In *Baker,* we noted the more specific question was "whether [the victim's] testimony supported a finding that the injury caused a protracted impairment of the *function* of his shoulder." (emphasis in original.) *Id.* Further, we found the jury could have determined this victim did suffer a protracted impairment of the function of his shoulder because stiffness is understood to be a condition experienced upon movement. *Id.* We concluded that "[i]nasmuch as the shoulder's function is to facilitate movement of the arm, an injury that produces continuing stiffness

in the shoulder can properly be characterized as an injury that causes 'protracted . . . impairment of the function' of a part of the body within the meaning of [RSMo section] 565.002(6)." *Id.*

A second victim was shot in the left calf. *Id.* That victim testified that he only suffered aches when it was cold or rainy. *Id.* Noting that the leg's function is for ambulation and/or support while standing, we found that this evidence was insufficient to establish a serious physical injury to this victim. *Id.*

We find the evidence presented at defendant's trial was more akin to the first situation presented in *Baker.* In *Baker,* the second victim testified only to occasional "aches." *Id.* Here, we have something more. The testimony of the victim, B.L., is limited. She was only six years old when she was injured. She testified that when she got shot, it hurt "[a] little bit." She then remembered going to the doctor and hospital for treatment. When asked at trial, "Does your leg hurt sometimes?", she replied "Yes." Her mother, however, testified more extensively. She stated that after B.L. was shot, she saw her "jumping up and down in the dirt." Frank Stallworth, S.S.'s brother, saw her limping. Her mother grabbed her and pulled her into the hallway of their apartment building, then took her to Cardinal Glennon Hospital for treatment. B.L. suffered a gunshot just above the kneecap of her right leg and the bullet exited at her inside thigh, leaving two scars. At the time of the trial, approximately fifteen months after the shooting, B.L. was still under a doctor's care for pain in her leg. The pain is attributed to the fact that the bullet left an air pocket in the leg that will not heal. Also, B.L.'s doctors said she would have arthritis for the rest of her life. B.L.'s mother has pulled her out of school a couple of times after a nurse called about B.L.'s pain. B.L.'s mother also explained there are times in the middle of the night when B.L. "would be screaming [her] leg hurt[s]." Based on the foregoing testimony, it is reasonable for the trial court to infer that B.L. has significant pain from her injury and that such pain impairs the function of her leg. Furthermore, we find the impairment is protracted because, at the time of the trial, it had persisted for approximately fifteen months. *See, Ross,* 939 S.W.2d at 18.

As the *Baker* court noted, the function of the leg is ambulation and/or support while standing. *Baker,* 859 S.W.2d at 813. Based on the evidence adduced at trial, we find that B.L.'s injury, which has caused her continuing pain and arthritis in her leg, can properly be characterized as an injury that causes "protracted . . . impairment of the function" of a part of the body within the meaning of RSMo sections 565.002(6) and 556.061(28). Therefore, we find the state presented sufficient evidence to establish a serious physical injury to B.L. to support defendant's convictions.

Based upon the foregoing, the judgment of the trial court is affirmed.

HOFF, P.J., and RHODES RUSSELL, J., concur.