# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 98-4123

———————

Michael J. Armstrong,         *
        *
          Appellant,        *
      v.        *    Appeal from the United States
        *    District Court for the Eastern
James A. Gammon,         *    District of Missouri.
        *
          Appellee.        *

———————

Submitted: September 17, 1999
Filed: November 15, 1999

———————

Before McMILLIAN and MURPHY, Circuit Judges, and TUNHEIM,[1] District Judge.

———————

TUNHEIM, District Judge.

      Appellant Michael Armstrong filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the Eastern District of Missouri after being convicted of class A felony first degree assault and armed criminal action in Missouri state court. The district court[2] denied his petition and certified the following issues for appeal: whether appellate counsel was constitutionally

———————

      [1]The Honorable John R. Tunheim, United States District Judge for the District of Minnesota, sitting by designation.

      [2]The Honorable Jean C. Hamilton, Chief Judge, United States District Court for the Eastern District of Missouri.

ineffective for failing to argue that the evidence was insufficient to prove "serious physical injury" pursuant to Mo. Rev. Stat. § 565.050; whether appellate counsel was constitutionally ineffective for abandoning the appeal of Armstrong's Rule 29.15 motion; and whether the pre-trial identification of Armstrong was obtained through the use of an impermissibly suggestive procedure that created a substantial likelihood of misidentification at trial. Armstrong has elected to abandon the issue regarding his Rule 29.15 motion, and we affirm the district court's denial of his other claims.

## BACKGROUND

On January 8, 1991, Mary Meidinger went for an after-dinner walk through her neighborhood in Kirkwood, Missouri. Shortly after 8:00 p.m., she noticed a two-tone blue van pull into a driveway several feet in front of her, and subsequently saw the van driving around the neighborhood several times. At approximately 8:20 p.m., she saw the van come around a corner, and it pulled up beside her. Meidinger was standing two or three feet away from the passenger side of the van. The driver slid across the seat to the passenger window to ask for directions, and Meidinger spoke with him for several minutes. The driver appeared not to understand her, and asked her to repeat the directions at least two or three times. The driver then asked Meidinger if she would do something for him, pointed a gun at her, and told her to get in the van. Meidinger screamed and started to run, and the driver shot her in her right hip.

Thomas VonHatten of the Kirkwood Police Department arrived on the scene within minutes after the shooting. Meidinger told him about the shooting and described her assailant as a black man wearing a knit cap who may have had a pock-marked face and was driving a two-tone blue van. She estimated that he was approximately twenty-eight to thirty-two years old and five feet eight inches in height. Two hours after the shooting, Keith Wandless, another police officer, pulled over the van Armstrong was driving. Wandless determined that Armstrong did not match the suspect's description either in height or age, and he let Armstrong go. Prior to the shooting, Armstrong's van

had caught Wandless's attention, and Wandless remembered that the last three digits of the license plate read "970."

Meidinger was taken to the hospital, where she stayed overnight for observation. The treating physician testified that the bullet entered in the back of her right hip and exited near the front of her thigh in the groin area. The bullet passed roughly an inch away from the main artery in her leg. The physician further testified that Meidinger will have two permanent scars where the entry and exit wounds were, and that she has permanent or long-term damage to her femoral nerve resulting in a loss of sensation to the front of her thigh.

The morning after the shooting, police officer Paul Faulstich conducted a computer search of license plates ending in "970" and narrowed the list down to one van in the Kirkwood area. Grover and Barbara Stewart were the registered owners of the van. After contacting the Stewarts, Faulstich learned that they were permitting Armstrong to drive the van. Faulstich obtained a 1988 photograph of Armstrong and constructed a photo spread using five other pictures of black males of similar age and appearance. Faulstich then showed this spread to Meidinger while she was still at the hospital. Faulstich made no suggestion that he considered any of the men to be suspects. After studying the photos for approximately five minutes, Meidinger tentatively chose Armstrong's picture as the man who shot her. Armstrong was arrested and questioned later that day.

Three days after the shooting, Faulstich showed Meidinger another photo spread. The spread contained six photographs, including one of Armstrong taken after his arrest two days earlier. Other than Armstrong's picture, the spread did not contain pictures of any of the individuals pictured in the first spread. Meidinger chose Armstrong's picture without hesitation.

After a jury trial, Armstrong was convicted of class A felony first degree assault under Mo. Rev. Stat. § 565.050 and armed criminal action under Mo. Rev. Stat. § 571.015. On October 23, 1992, he was sentenced to consecutive terms of twenty-four years for assault and three years for armed criminal action. Prior to the disposition of his direct appeal, Armstrong filed a Missouri state post-conviction motion, which was denied. Armstrong's conviction, sentence, and denial of his post-conviction motion were thereafter affirmed on direct appeal. Armstrong filed two motions to recall the mandate with the Missouri Court of Appeals, which were denied, and he petitioned to the Missouri Supreme Court for a writ of habeas corpus, which was denied. Armstrong then filed this habeas petition.

## ANALYSIS

### A.    Standard of Review

Armstrong filed this petition for writ of habeas corpus on April 25, 1996, one day after President Clinton signed the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214. Accordingly, our review of Armstrong's habeas petition is limited by AEDPA, which provides in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is an unreasonable application of clearly established Federal law if the "'decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent.'" *Long v. Humphrey*, 184 F.3d 758, 760 (8th Cir. 1999) (quoting *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 890 (3d Cir. 1999) (en banc)).

### B.     Ineffective Assistance of Counsel

Armstrong contends that there was insufficient evidence that Meidinger suffered "serious physical injury" under Missouri law and argues that his appellate counsel on direct appeal was ineffective for failing to raise this issue. Because Armstrong was sentenced prior to January 1, 1996, and he raised this issue in a motion to recall the mandate filed with the Missouri Court of Appeals, the merits of this claim are properly before this Court. *See* Mo. Sup. Ct. R. 29.15(m); *Chambers v. Bowersox*, 157 F.3d 560, 565 & n.5 (8th Cir. 1998), *cert. denied*, 119 S. Ct. 2383 (1999).

A claim of ineffective assistance of appellate counsel is reviewed under *Strickland v. Washington*, 466 U.S. 668 (1984). *See Chambers*, 157 F.3d at 566. To prevail on this claim, Armstrong must show both that his counsel's performance was objectively unreasonable and that there is a reasonable probability that the outcome of his appeal would have been different if counsel had raised the claim. *See id.* Counsel is not required to raise every colorable claim on appeal. *See Roe v. Delo*, 160 F.3d 416, 418 (8th Cir. 1998) (citation omitted). Unless there is evidence to the contrary, we assume that counsel's decision not to raise a claim was a strategic decision to emphasize stronger claims at the expense of weak ones. *See id.*

In challenges to the sufficiency of evidence, the relevant inquiry is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See State v. Williams*, 784 S.W.2d 309, 311 (Mo. Ct. App. 1990)

(quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In Missouri, first degree assault is not a class A felony unless the victim suffers "serious physical injury." Mo. Rev. Stat. § 565.050. "Serious physical injury," in turn, is defined as injury that "creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body." Mo. Rev. Stat. § 565.002(6). Armstrong relies on *State v. Baker*, in which the victim was shot in the leg and the only testimony regarding his injury was that his leg ached when the weather was cold or rainy. *State v. Baker*, 859 S.W.2d 805, 813 (Mo. Ct. App. 1993). The Missouri Court of Appeals held that this was insufficient evidence of "serious physical injury," and noted that this evidence did not show any impairment of the victim's ability to stand or walk. *See id.* At the same time, the court upheld a finding that another victim had suffered serious physical injury. *See id.* The other victim was shot in the shoulder, and testified that he continued to experience stiffness as a result. *See id.* The court held that continued stiffness constituted protracted impairment of the shoulder's function because it interfered with the shoulder's movement. *See id.*

At Armstrong's trial, a doctor testified that Meidinger has suffered nerve damage and a resultant loss of sensation that is at least long term and possibly permanent. Armstrong argues that this loss of sensation, like the leg injury in *Baker*, does not implicate the leg's function of standing or walking, and therefore is not an "impairment of the function of any part of the body" under § 565.002(6). Unlike the victim in *Baker*, however, Meidinger does not merely experience intermittent aches; instead, she has experienced a loss of sensation. At the outset, therefore, it appears that Meidinger has suffered an impairment of the function of a part of her body, namely, her femoral nerve, because the function of a nerve is to feel and her nerve is no longer fully performing this function. Furthermore, a jury could rationally conclude that the loss of sensation interferes with Meidinger's use of her leg and is akin to the shoulder stiffness that the *Baker* court upheld as sufficient evidence of serious physical injury. *See State v. Kruger*, 926 S.W.2d 486, 489 (Mo. Ct. App. 1996) (weakness and numbness in

–6–

victim's leg was serious physical injury because victim was "unable to distinguish sensations which directly impairs the functioning of her leg.").

Armstrong also argues that Meidinger herself testified that she suffered no loss of function. In challenges to the sufficiency of evidence, however, Missouri appeals courts disregard evidence and inferences contrary to the verdict, and thus this evidence would not be used to disturb the verdict. *See Baker*, 859 S.W.2d at 811. Accordingly, we are unable to conclude that there is any reasonable probability that the outcome of Armstrong's appeal would have been different had his counsel raised the insufficiency of evidence issue. Armstrong's claim therefore fails.

### C.    Impermissibly Suggestive Identification Procedures

Armstrong argues that the photo spreads used to identify him impermissibly suggested to Meidinger that the officer thought Armstrong was her attacker and that this suggestiveness casts doubt on the reliability of Meidinger's in-court identification of Armstrong. At trial, Armstrong moved to suppress Meidinger's out-of-court identifications of him and to disallow Meidinger's in-court identification. On direct appeal from his conviction, the Missouri Court of Appeals affirmed the denial of these motions.

To prevail on his claim that the identifications were unreliable, Armstrong must first show that the out-of-court identification procedures were impermissibly suggestive. *See United States v. Triplett*, 104 F.3d 1074, 1079 (8th Cir. 1997) (quoting *United States v. Ramsey*, 999 F.2d 348, 349 (8th Cir. 1993)). Armstrong's sole basis for asserting that the photo spreads were impermissibly suggestive is that his photograph was the only one to be included in both. This fact is insufficient, by itself, to show that the procedure was impermissibly suggestive. *See United States v. Johnson*, 56 F.3d 947, 954 (8th Cir. 1995). Furthermore, the district court found that Meidinger was not told that Armstrong was a suspect, nor was there any evidence that

Armstrong's appearance in the photo spreads was suggestive in any way; in fact, different photographs of Armstrong were used in each spread, and Meidinger testified that she did not know that Armstrong was the only person to appear in both. These findings of fact are reviewable only for clear error. *See Ivy v. Bowersox*, 122 F.3d 675, 676 (8th Cir. 1997), *cert. denied*, 118 S. Ct. 1063 (1998). Under these facts, Armstrong cannot show that the out-of-court identification procedures were impermissibly suggestive, and the Missouri Court of Appeal's denial of this claim accordingly did not involve an unreasonable application of Federal law.

**CONCLUSION**

For these reasons, the judgment of the district court is affirmed.

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.