**STATE of Missouri, Respondent,**

v.

**Joseph A. CLARK, Jr., Appellant.**

**Joseph CLARK, Appellant,**

v.

**STATE of Missouri, Respondent.**

**Nos. WD 49380, WD 50813.**

Missouri Court of Appeals, Western District.

Jan. 16, 1996.

Rebecca L. Kurz, Asst. Public Defender, Kansas City, for Appellant.

Philip M. Koppe, Asst. Attorney General, Kansas City, for Respondent.

Before FENNER, C.J., P.J., and SPINDEN and SMITH, JJ.

FENNER, Chief Judge.

Joseph A. Clark appeals from his convictions after trial by jury and resulting consecutive sentences of life imprisonment without probation or parole, 50 years, and seven years imprisonment, as a prior offender, for murder in the first degree, armed criminal action and burglary in the second degree, respectively.

Viewed in the light most favorable to the verdict, the evidence at trial reveals that on May 5, 1993, Dr. Shawn Storm and his wife returned to their home at 2525 Holmes in Kansas City, Missouri, at approximately 10:30 p.m., after visiting his sister. Mrs. Storm parked their Jeep in the street while Dr. Storm went to move their other car from the driveway. Mrs. Storm heard four shots and saw Dr. Storm walking down the driveway holding his abdomen.

Mrs. Storm rushed her husband to the emergency room at Truman Medical Center, where he died the following morning. An autopsy revealed that the cause of death was a single gunshot wound fired from an undetermined range that punctured Dr. Storm's aorta, causing him to bleed to death.

A police investigation revealed that a burglar had entered the Storm residence by forcing open a window at the back of the house on the east side. Inside the home, a refrigerator had been pushed aside, there was a videocassette recorder sitting on the counter, and an overturned television on the floor. Further investigation revealed a gray, plastic trash bag containing various toiletry items and some miscellaneous papers on top of a bed in the upstairs portion of the home.

Latent fingerprints taken from the gray bag were analyzed and found to match the known fingerprints of appellant. A possible shoe print was also developed from the miscellaneous papers on the Storms' bed, and it was found to have the same general class characteristics (size, design, and degree of wear) as that admittedly worn by appellant on the night in question.

Appellant was arrested based on the matching fingerprints and interrogated by police on May 13, 1995. In a videotaped statement played at trial, appellant admitted that on May 5, 1993, he had "checked out" the neighborhood and determined that no one was home at the Storm residence. He went to his mother's house at 2533 Holmes, just down the street from the Storms' house, obtained a crowbar, and returned to the Storm home. He climbed over the back yard fence and used a chair to climb through the back window of the house. He pushed the refrigerator out of his way and began taking items from various areas of the house. While going upstairs, he heard a noise, saw car lights, looked out a window, and saw the Storms' Jeep pulling up in front of the house.

At this point, appellant claims to have climbed out of the kitchen window only to be startled by Dr. Storm. Appellant claims he heard Dr. Storm call him an "asshole" just as he reached the chair as he climbed out the window. Appellant finished climbing out of the window as Dr. Storm approached. Appellant walked in front of Dr. Storm and stated that he saw him "moving around" and thought that Dr. Storm might have a gun, so he drew his gun and fired once at Dr. Storm. Appellant then began running and fired two additional shots as he ran away. Appellant climbed the wooden, back fence and ran to his girlfriend's house at 4028 Montgall.

Upon further questioning, appellant told police he gave the gun used in the shooting to a friend. The gun was later recovered and a ballistics test revealed that the bullet recovered during the autopsy of Dr. Storm

had been fired from the H & R Revolver used by appellant.

Prior to the trial of the case, appellant filed a motion to disqualify the Jackson County, Missouri, Office of the Prosecuting Attorney from the case and appoint a Special Prosecuting Attorney because appellant had been represented on a prior criminal matter by Kathy Finnell, an Assistant Prosecuting Attorney at the time of the incident in question. The matter on which Ms. Finnell served as appellant's counsel had concluded at the time of the shooting of Dr. Storm and was used to support the prior offender charge against appellant. Ms. Finnell did not have any role in prosecuting the case at bar. The trial court overruled the motion to disqualify, finding that the prior case was totally unrelated to the pending case.

At trial, after the State rested its case, the defense rested without presenting any evidence, moving for judgment of acquittal at the close of the State's case and at the close of all evidence. Both motions were denied. Instructions were submitted as to the charged offense of murder in the first degree and the lesser included offense of murder in the second degree, conventional and felony murder.

During appellant's closing argument, counsel made reference to the "testimony" of appellant on the videotape, instructing the jury that they could "see his demeanor" and "judge for [themselves]" when appellant stated he "wasn't trying to kill the dude, just scared" and that he "didn't know what [Dr. Storm] was going to do to [him], so [he] shot [Dr. Storm]." In response, the State made the following argument:

> You've had the chance to look at each of the State's witnesses as they take the stand, and you judge their credibility and you determine from eyeballing them right here in the courtroom whether or not you believe them. But all you've got in terms of believing this man is his statement to the police on a videotape, and I want to tell you right now, you don't have to believe everything that you hear on that tape.

No objection to this argument was made by appellant's counsel. Arguments were completed and after jury deliberation, appellant

was convicted on the aforementioned charges.

On September 24, 1994, appellant filed a *pro se* motion under Rule 29.15 to vacate his convictions and sentences. An amended motion was filed on appellant's behalf by appellate counsel on December 6, 1994. The amended motion alleged that appellant's trial attorneys had been ineffective in several respects, including their failure to object when the prosecution made the above comments, alleging they constituted improper remarks regarding appellant's right not to testify at trial.

On February 7, 1995, the motion court issued findings of fact and conclusions of law denying postconviction relief without an evidentiary hearing. This appeal follows.

## I. CONFLICT OF INTEREST

■ Appellant contends that the trial court abused its discretion in denying his pretrial motion to disqualify the entire staff of the Jackson County Prosecutor's Office and appoint a special prosecutor. Appellant argues that the participation of the Jackson County Prosecutor's Office created a conflict of interest and the appearance of impropriety due to the fact that an attorney who represented appellant as a public defender in a prior criminal matter subsequently became an Assistant Prosecuting Attorney in Jackson County and was on the staff at the time of the trial of this case.

Appellant asserts that the prior case was not "unrelated" to the instant case because the State utilized the prior conviction to establish appellant's status as a prior offender. This argument, however, has been rejected by the courts of this state in *State v. O'Neill*, 825 S.W.2d 376, 377 (Mo.App.1992), and *State v. Puckett*, 691 S.W.2d 491, 494 (Mo.App. 1985). The *Puckett* court stated that use of the prior conviction in which the prosecutor was involved as counsel for defendant to establish prior offender status did not require disqualification of the prosecutor, because use of the conviction from the prior proceeding, a matter of public record, in such manner was clearly not inconsistent with the prosecutor's duty to his office. 691 S.W.2d

at 494. We see no reason to challenge the sound reasoning of the *Puckett* court in this case.

This case does differ from *O'Neill* and *Puckett* in that the representation in those cases occurred several years before the crimes in question. While the prior representation in the case at bar concluded only months before the shooting of Dr. Storm, there is no evidence that the crimes were interrelated in any way. Further, there is no indication that appellant's former attorney took part in the prosecution against him for the charges in question or that the former attorney possessed any confidential information related to the incident involving Dr. Storm. The trial court did not abuse its discretion in denying appellant's pretrial motion to disqualify the Jackson County Prosecutor's Office. Point denied.

## II. SUFFICIENCY OF THE EVIDENCE

 In order to prove murder in the first degree under section 565.020, RSMo 1986, the State must prove that appellant knowingly caused the death of Dr. Storm after deliberation upon the matter. *State v. Watson*, 839 S.W.2d 611, 616 (Mo.App.1992). Deliberation is defined as "cool reflection for *any* length of time no matter how brief." § 565.002(3), RSMo 1986. A deliberate act is a free act of the will done in furtherance of a formed design to gratify a feeling of revenge or to accomplish some other unlawful purpose and while not under the influence of violent passion suddenly aroused by some provocation. *State v. Baker*, 859 S.W.2d 805, 815 (Mo.App.1993).

 Direct evidence of deliberation is not necessary to support a conviction for murder in the first degree, as deliberation may be proved by indirect evidence and inferences reasonably drawn from the circumstances surrounding the slaying. *State v. Goforth*, 881 S.W.2d 256, 264 (Mo.App.1994); *State v. Reed*, 816 S.W.2d 919, 922 (Mo.App. 1991). The deliberation necessary to support a conviction of first degree murder need only be momentary. *State v. Davis*, 905 S.W.2d 921, 923 (Mo.App.1995). It is only necessary that the evidence show the defendant "considered taking another's life in a deliberate

state of mind." *State v. Roe*, 845 S.W.2d 601, 607 (Mo.App.1992).

 Appellant claims that although the evidence presented by the State demonstrated that he shot and killed Dr. Storm, the State presented no evidence, circumstantial or direct, that conclusively proved the element of deliberation required for a first degree murder conviction. In reviewing the appellant's claim of insufficient evidence to support the conviction, this court accepts as true all the evidence favorable to the State, including all favorable inferences drawn from the evidence, and disregards all contrary evidence and inferences. *State v. Silvey*, 894 S.W.2d 662, 673 (Mo. banc 1995). The appellate court neither weighs the evidence nor determines reliability or credibility of witnesses, instead limiting its determination to whether there is substantial evidence from which a reasonable jury might have found the defendant guilty beyond a reasonable doubt. *State v. Idlebird*, 896 S.W.2d 656, 661–62 (Mo.App.1995); *Silvey, id.*

We believe the evidence presented by the State was sufficient to establish the element of deliberation required to prove a charge of murder in the first degree. Appellant's own statement provides sufficient support for the element of deliberation. Appellant saw the Storms pull up to the house in their Jeep and instead of immediately fleeing the same way he entered the premises—over the back fence—he confronted Dr. Storm after Dr. Storm saw him climbing out the window and called him an "asshole." Instead of fleeing immediately, appellant observed Dr. Storm's actions and "thought he might have a gun," so he drew his gun and proceeded to fire at Dr. Storm one time before he began to run. The facts and circumstances of the shooting, and the inferences that can be reasonably drawn therefrom, pulled from appellant's own statements, are sufficient to support a finding of deliberation and a conviction of first degree murder.

Additional evidence supporting a finding of deliberation was the firing of three separate gunshots. Deliberation has been inferred from evidence of multiple wounds. *State v. Barnes*, 740 S.W.2d 340, 344 (Mo.App.1987).

Although Dr. Storm suffered only one wound, the fact that appellant fired the gun three times, and had to pull the trigger three times to do so,[1] cuts against appellant's argument that he fired only in fear against an unarmed man. The evidence was sufficient to support the conviction of appellant. The trial court did not err in denying appellant's motions for judgment of acquittal. Point denied.

## III. IMPROPER CLOSING ARGUMENT

■ Appellant claims that the trial court plainly erred in failing to *sua sponte* declare a mistrial or, in the alternative, instruct the jury to disregard a portion of the prosecuting attorney's closing argument which he claims was a direct reference to his failure to testify. This error is reviewed under the "plain error" standard due to the absence of an objection to the allegedly egregious comments.

■ To be entitled to relief under the "plain error" rule, a defendant must go beyond a showing of demonstrable prejudice to establish "manifest prejudice" affecting substantial rights, and even if the argument is improper, a conviction will be reversed only if it is established that it had a decisive effect on the jury's verdict. *State v. Parker*, 856 S.W.2d 331, 333 (Mo. banc 1993). Because trial strategy is an important consideration in any trial, assertions of "plain error" concerning matters involving closing argument are generally denied without explanation. *State v. Cobb*, 875 S.W.2d 533, 537 (Mo. banc 1994), *cert. denied*, 513 U.S. ——, 115 S.Ct. 250, 130 L.Ed.2d 172 (1994).

■ The failure to object to the remarks at issue is fatal to appellant's claim of error. Had a timely objection been made, the trial judge could have taken appropriate steps to make a correction if the remarks were improper because an admonition to the jury is usually sufficient to cure any prejudicial effect of prosecutorial comments. *See State v. Kempker*, 824 S.W.2d 909, 911 (Mo. banc 1992). Counsel did not provide the trial judge with an opportunity to correct the perceived improper comment, and we decline

to hold that the judge was required to interrupt counsel in this case.

■ Further, even if the failure to object was not fatal to appellant's argument, we believe it is clear that the comments appellant now seeks to object to were within the bounds of proper closing argument. The trial court has broad discretion in controlling closing arguments. *State v. Twenter*, 818 S.W.2d 628, 634 (Mo. banc 1991). During closing arguments, a prosecutor is allowed to argue the evidence and all reasonable inferences from the evidence. *State v. Harris*, 870 S.W.2d 798, 814 (Mo. banc 1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 371, 130 L.Ed.2d 323 (1994). "The prosecutor has a right to draw any inferences from the evidence which he believes in good faith are justified." *Id.*

■ A prosecutor may not make direct and certain references to an accused's failure to testify. *State v. Sidebottom*, 753 S.W.2d 915, 920 (Mo. banc 1988), *cert. denied*, 488 U.S. 975, 109 S.Ct. 515, 102 L.Ed.2d 550 (1988). A direct reference to an accused's failure to testify is made when the prosecutor uses words such as "defendant," "accused," and "testify" or the equivalent. *State v. Lawhorn*, 762 S.W.2d 820, 826 (Mo. banc 1988). Indirect reference's are improper only if there is a calculated intent demonstrated by the prosecutor to magnify the accused's decision to not testify so as to call it to the jury's attention. *Id.*

■ In his own closing argument, appellant's counsel incorrectly referred to his videotaped statement as "testimony" and encouraged the jury to review appellant's demeanor and judge his intentions for themselves. In retaliating to the remarks of appellant, the prosecutor can go further than he would normally be permitted absent the initial remarks. *State v. Castillo*, 853 S.W.2d 381, 386 (Mo.App.1993). A defendant may not provoke a reply to his own argument and then assert error. *State v. Parker*, 886 S.W.2d 908, 922 (Mo. banc 1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1827, 131 L.Ed.2d 748 (1995).

---

1. It is not disputed that the weapon in question was a revolver and not an automatic weapon, firing only one bullet for each squeeze of the trigger.

The remarks of the prosecutor were not objectionable as they were clearly within the bounds of proper closing argument, especially in light of the comments of appellant's counsel directing the jury to the videotaped statement of appellant. The trial court did not commit "plain error" in failing to declare a mistrial, *sua sponte*, after the prosecutor made the challenged remarks as the remarks were within the bounds of proper closing argument.

## IV. RULE 29.15 PROCEEDINGS

■ As his final point on appeal, appellant claims that the trial court erred in denying his Rule 29.15 motion without a hearing. Appellant's Rule 29.15 motion alleged ineffective assistance of counsel based on the failure of trial counsel to object to the remarks made by the prosecutor in his closing argument which allegedly referenced appellant's failure to testify, as detailed in the preceding section of this opinion.

■ We determined that the remarks that the appellant claims were improper were not objectionable. On the contrary, they constituted proper argument in response to the arguments made by appellant's trial counsel. An attorney will not be held to be ineffective for failing to make a non-meritorious objection. *State v. Leady*, 879 S.W.2d 644, 648 (Mo.App.1994). Consequently, appellant's trial counsel cannot be held to be ineffective for failing to object to proper closing remarks.

■ Furthermore, because we determined that the remarks did not constitute

plain error even if objectionable, appellant cannot relitigate the issue under the guise of ineffective assistance of counsel in a post-conviction proceeding.[2] A finding of no manifest injustice under the "plain error" standard on a direct appeal serves to establish a finding of no prejudice under the test for ineffective assistance of counsel provided in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *State v. Nolan*, 872 S.W.2d 99, 104 (Mo. banc 1994); *Sidebottom*, 781 S.W.2d at 796–97.

■ Finally, even if the matter were raised solely in appellant's rule 29.15 motion as ineffective assistance of counsel, appellant's argument would fail. The failure to object to objectionable evidence or argument does not establish ineffective assistance of counsel unless the error resulted in a substantial deprivation of the accused's right to a fair trial. *State v. Radley*, 904 S.W.2d 520, 525 (Mo.App.1995). We cannot say that the alleged statements of the prosecutor, even if objectionable, resulted in a substantial deprivation of the accused's right to a fair trial.

■ The trial court did not err in overruling appellant's Rule 29.15 motion without an evidentiary hearing. An evidentiary hearing is required only if it is requested and if the files and records of the case do not conclusively show that the movant is entitled to no relief. Rule 29.15(g). A movant is entitled to an evidentiary hearing if (1) he or she alleges facts which would warrant relief, if true, (2) the allegations are not refuted by the record, and (3) the movant was preju-

---

2. Appellant claims he is entitled to relitigate the issue as part of his Rule 29.15 motion pursuant to *State v. Sublett*, 887 S.W.2d 618 (Mo.App. 1994). Having thoroughly reviewed Missouri case law, we find *Sublett* to be an anomaly. In *Sublett*, a division of this court found that comments by the prosecution in closing argument did not constitute plain error on direct appeal, yet remanded the defendant's Rule 29.15 motion for an evidentiary hearing even though the motion court determined the record conclusively showed the defendant was entitled to no relief. 887 S.W.2d at 620, 621–22. Defendant's Rule 29.15 motion alleged that trial counsel was ineffective for failing to develop an alleged alibi defense and in failing to object to improper closing argument. In addressing the Rule 29.15 appeal, the court discussed counsel's failure to

develop the alleged alibi defense and reversed and remanded the matter to the trial court for an evidentiary hearing based on the deficiencies surrounding the alibi defense. Though the court states that the defendant was entitled to a hearing on "counsel ineffectiveness with reference to defendant's alleged alibi defense, and on the allegation of counsel ineffectiveness in failing to object to prosecutor's allegedly improper and inflammatory jury argument," 887 S.W.2d at 622, there is no discussion in this section of the alleged improper remarks and no reference or citation to the *Nolan* and *Sidebottom* line of cases. In this regard, we believe *Sublett* is inconsistent with established Missouri case law and find it unpersuasive. We believe the *Nolan* and *Sidebottom* line of cases controls the disposition of this issue.

diced by the alleged errors. *State v. Carey,* 808 S.W.2d 861, 867 (Mo.App.1991). The case record in this matter clearly indicated that appellant was not entitled to the relief he sought through his Rule 29.15 motion as the facts alleged to support his claim of error do not warrant relief. Point denied.

The judgments of the trial court and the motion court are affirmed in all regards.

All Concur.