STATE of Missouri, Plaintiff/Respondent,

v.

**Paul KRUGER, Defendant/Appellant.**

**PauL L. KRUGER, Movant,**

v.

**STATE of Missouri, Respondent.**

Nos. 67681, 69703.

Missouri Court of Appeals,
Eastern District,
Division Four.

June 28, 1996.

Ellen H. Flottman, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., David G. Brown, Asst. Atty. Gen., Jefferson City, for respondent.

PUDLOWSKI, Presiding Judge.

Paul Leslie Kruger (defendant) appeals from his convictions of first degree assault, § 565.050 RSMo 1994, and armed criminal action, § 571.015 RSMo 1994. The trial court sentenced him to twenty five years for first degree assault with a consecutive term of imprisonment of ten years for the crime of armed criminal action. We affirm.

Teri McNamee[1] (McNamee) was married to defendant for four years and they had a daughter. In August of 1993, McNamee informed defendant that she wanted a divorce. Subsequently, McNamee and daughter moved into her mother's home. Defendant retained supervised visitation with their daughter.

On Tuesday, 24 August 1993, defendant attempted to reconcile with McNamee. McNamee rejected his proposal. She wanted to continue with their divorce proceedings and obtained a restraining order against him.

Early Saturday morning, August 28, McNamee went to Schnuck's grocery store in St. Louis County to make an extra copy of her ex parte order against defendant. As she was parking, she saw defendant walking toward her vehicle. She began to roll up the windows and lock the doors.

Defendant exhibited a semi-automatic .380 caliber pistol, pointed it at McNamee and fired. He succeeded in hitting McNamee first in the left side of her jaw and elbow and then twice in her back. McNamee was taken

---

1. Teri McNamee was named Teri Kruger at the time of this incident.

to the hospital where she was treated, hospitalized for five days and subsequently released.

Defendant was arrested later that morning. After waiving his Miranda rights, he confessed to shooting his wife to the police and expressed his sorrow.

Defendant asserts on appeal that there was insufficient evidence to support a first degree assault because of the state's failure to produce evidence that McNamee suffered serious physical injury from the assault. He also contends that he was denied effective assistance of counsel during his trial.

## I.

■ Defendant first challenges the sufficiency of the state's evidence of assault in the first degree. He denies that McNamee suffered serious physical injury as required by § 565.050(2) RSMo 1994 which would raise the charge to a class A felony.

In determining whether the evidence is sufficient to support the verdict, we view the evidence and all inferences reasonably to be drawn therefrom in the light most favorable to the verdict, and disregard all contrary evidence and inferences. *State v. Baker*, 859 S.W.2d 805, 811 (Mo.App. E.D.1993). Our function is not to weigh the evidence, *State v. Kelly*, 539 S.W.2d 106, 109 (Mo. banc 1976), but to determine only whether there was sufficient evidence from which a rational fact finder could have found defendant guilty beyond a reasonable doubt. *State v. Bonuchi*, 636 S.W.2d 338, 340 (Mo. banc 1982), cert. denied 459 U.S. 1211, 103 S.Ct. 1206, 75 L.Ed.2d 446 (1983).

Serious physical injury is defined as an injury "that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body." § 565.002(6) RSMo. 1994. Defendant asserts that the injuries resulting from the shooting were not serious physical injuries. However, the severity of injuries caused by him are sufficient to satisfy any part of this definition.

■ 1. Substantial risk of death suggests circumstances which give rise to apprehension of life threatening consequences. *State v. Adams*, 808 S.W.2d 925, 931 (Mo.App. S.D.1991). Defendant shot McNamee in the face and twice in the back. When she was initially transported to the hospital, the trauma surgeon who treated her stated that individually, each of these shots potentially could result in life threatening consequences. "The question is whether the injuries inflicted in the assault, viewed objectively, are of a degree of severity sufficient to raise a legitimate concern either that the victim could expire or could suffer more than a momentary loss of a bodily function." *State v. Johnson*, 770 S.W.2d 263, 265–266 (Mo.App. W.D.1989). McNamee's survival of the assault does not render her condition any less serious nor does it negate the proposition that she sustained serious injuries that could have life threatening consequences. *State v. Johnson*, 770 S.W.2d at 266.

■ 2. The serious disfigurement element of the definition is also met. Disfigurement means to deface or mar the appearance or beauty of someone. *State v. Williams*, 740 S.W.2d 244, 246 (Mo.App. E.D.1987). In *Williams*, the victim was left with a five inch scar in a prominent location which constituted serious disfigurement. Similarly, in *Pettis* the victim was seriously disfigured when she received a four inch scar on her arm. *State v. Pettis*, 748 S.W.2d 793, 794 (Mo.App. E.D.1988).

Here, it is reasonable to conclude that McNamee suffered serious disfigurement at the hands of the defendant. McNamee received scars on her face, chin, elbow and back. In addition to these scars, some of which are prominent, McNamee also had to be given a new tooth, caps and crowns where the bullet went through her face. Both the scars and the dental work taken together indicate that she suffers serious disfigurement due to the extent of the injuries inflicted upon her by defendant.

3. Finally, McNamee suffers protracted loss or impairment of function of any part of the body. Due to the location of the two bullets in McNamee's back, the trauma surgeon declined to remove them to avoid the possibility of additional damage. Consequently, McNamee has some loss of function

in her anterior compartment of her left leg which results in numbness along the outside of her ankle. One of the bullets injured the fifth lumbar nerve which creates the potential for a long term disability. McNamee was required to temporarily wear a leg brace to facilitate the healing of her wounds. The injury continues to cause weakness and numbness in her leg.

McNamee's case is distinguishable from *Baker* in which one of the victims suffered from a general ache in his leg. The court stated that the ache was not an impairment to the function of movement or standing on the leg. *State v. Baker,* 859 S.W.2d at 813. McNamee's leg is weaker and she is unable to distinguish sensations which directly impairs the functioning of her leg. Point one is denied.

## II.

Defendant also contends ineffective assistance of counsel in that counsel failed to file a motion to suppress his statements, move for a change of venue or request a second psychological examination. Defendant seeks to have an evidentiary hearing on his Rule 29.15 motion. The standard of review of a motion court's determination of a Rule 29.15 motions is clearly erroneous. Rule 29.15(j); *State v. Starks,* 856 S.W.2d 334, 336 (Mo. banc 1993). The motion court did not clearly err in its denial of the Rule 29.15 evidentiary hearing.

For defendant to receive an evidentiary hearing, he must meet three requirements: "(1) the motion must allege facts, not conclusions, warranting relief; (2) the facts alleged must raise matters not conclusively refuted by the files and records in the case; and (3) the matters complained of must have resulted in prejudice to the movant." *State v. Driver,* 912 S.W.2d 52, 55 (Mo. banc 1995). Defendant claims that his counsel was ineffective in failing to make a motion to suppress his statements, request a change of venue or request a second psychological examination.

His statements to the police constituted a confession of his action and were made voluntarily following defendant's waiver of his Miranda rights. Defendant's defense rested on the fact that he was not responsible for the assault because he suffered from a mental disease. This defense required the defendant to concede the assault. Counsel's motion to suppress these statements would have been meritless. The motion court was not clearly erroneous in finding counsel was not ineffective for failing to file a meritless motion to suppress. *State v. Hunter,* 840 S.W.2d 850, 870 (Mo. banc 1992).

■ Secondly, defendant complains that counsel should have requested a change of venue due to the pretrial publicity prejudicing jurors. The motion court failed to find any prejudice that affected the defense. The state and defendant's counsel inquired about pretrial publicity during voir dire. None of the veniremen stated that they knew of the publicity surrounding the original incident. Defendant cannot be prejudiced by issues that do not exist nor facts adequately covered in voir dire. *State v. Weaver,* 912 S.W.2d 499, 518 (Mo. banc 1995).

■ Lastly, defendant contends that his counsel should have requested a second psychiatric examination of him. When a movant "avers his lawyer rendered ineffective assistance of counsel for failure to present a witness at trial, the motion must state facts to which the unproduced witness would have testified;" if movant fails to do so, he is not entitled to an evidentiary hearing. *State v. Jennings,* 815 S.W.2d 434, 449 (Mo.App. E.D. 1991). Defendant's motion did not contain specific allegations or facts warranting relief, fails to allege any prejudice and is based on speculation. The motion court was not clearly erroneous in denying his request for an evidentiary hearing.

Judgment affirmed.

SIMON and HOFF, JJ., concur.