STATE of Missouri, Respondent,

v.

Vincent KEE, Appellant.

No. WD 52686.

Missouri Court of Appeals,
Western District.

Sept. 9, 1997.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Oct. 28, 1997.

Application to Transfer Denied
Dec. 23, 1997.

James R. Wyrsch, W. Brian Caddy, Wyrsch, Hobbs, Mirakian & Lee, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before ELLIS, P.J., and LOWENSTEIN and HOWARD, JJ.

ELLIS, Presiding Judge.

Vincent J. Kee appeals from a judgment entered upon his conviction by jury of first degree assault, § 565.050, armed criminal action, § 571.015, and violating an order of protection, §§ 455.045, 455.050, and

455.085.8.[1] Kee was sentenced to concurrent terms of thirty years on the assault count and twenty years on the armed criminal action count, and to six months jail time for violating the court order of protection.

The record reflects that on October 24, 1995, Kee contacted his estranged wife, Georgia L. Kee, at work and told her that he would rather go to jail than pay child support and that no one was going to make him pay child support or take his children away from him. During this conversation, Kee also threatened to kill her. The next day when Mrs. Kee went to pick up one of their children at school, she found Kee standing outside the child's classroom. When she discovered that Kee was there to pick up the child, Mrs. Kee began to walk away. Kee grabbed her around the neck, threw her up against the wall and began choking her. The following day, Mrs. Kee obtained an *ex parte* order for protection from the Jackson County Circuit Court.

About noon on November 7, 1995, Hazel Crow, Mrs. Kee's mother, drove her daughter to the Jackson County Courthouse, where Mrs. Kee obtained a full order of protection against Kee. At approximately 4:15 p.m. that afternoon, Kee called Mrs. Kee at work and said, "One, two, three [your] time [is] up." About fifteen minutes later, Mrs. Kee left work and walked across the street to the parking lot where her car was parked. As she was putting the key into her car's ignition, Kee began ramming the front of his truck into the front of her car. Mrs. Kee started her car and tried to push Kee's truck back, but was unable to do so. When Mrs. Kee began to dial 9–1–1 on her car telephone, Kee jumped out of his truck, climbed over the hood of her car, and began hitting the driver's side window with his fist. Kee broke the window and struck Mrs. Kee with an unidentified object, causing her to lose consciousness. A short while later, Mrs. Kee regained consciousness and exited her vehicle. Kee came over to her and said, "Oh, you didn't die." Mrs. Kee's knees buckled and she laid on the ground until she heard Kee drive away.

Two of Mrs. Kee's co-workers, April Mason and Rex Taylor, witnessed the assault and assisted her after Kee fled in his truck. Mrs. Kee's face was so badly mutilated, they were able to recognize her only by her voice. Mason wrapped her coat around Mrs. Kee's face to minimize the bleeding. Mrs. Kee repeatedly stated that her husband had attacked her and that she had a restraining order against him in her purse.

Mrs. Kee was taken to the emergency room at Truman Medical Center. She had multiple stab wounds: one to her right jaw, five to the right side of her neck, two to her left chest, one to her left forearm, and one to her left hand. These wounds were consistent with a sharp, stabbing instrument.

The next day, the police executed a search warrant at Kee's residence and took photographs of Kee's truck, which had sustained damage to its front end. A pair of "Rocky" shoes were retrieved from Kee's bedroom, which had soles similar to the print taken from the hood of Mrs. Kee's car.

Following a jury trial on March 12, 1996, Kee was convicted of first degree assault, armed criminal action, and violating a full order of protection. On April 9, 1996, he was sentenced to concurrent terms of thirty years imprisonment for the assault conviction and twenty years for the armed criminal action conviction, and to six months jail time for violating the protection order. Kee brings three points on appeal.

In his first point, Kee challenges the sufficiency of the evidence supporting his convictions. In considering a challenge to the sufficiency of the evidence to support a criminal conviction, our review is limited to determining whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. *State v. Idlebird,* 896 S.W.2d 656, 660 (Mo.App. W.D.1995). We view the evidence in the light most favorable to the verdict, including all favorable inferences drawn from the evidence, and disregard all evidence and inferences to the contrary. *State v. Tracy,* 918 S.W.2d 847, 851 (Mo.App. W.D.1996). This standard applies

---

1. All statutory references are to RSMo 1994, unless otherwise noted.

to our review of all evidence, direct as well as circumstantial. *State v. Luna,* 800 S.W.2d 16, 19 (Mo.App. W.D.1990). We neither weigh the evidence, nor determine the reliability or credibility of the witnesses. *Idlebird,* 896 S.W.2d at 661.

■ Kee first argues that the State failed to prove he was the assailant. He contends the eye witness testimony was inconclusive and unreliable because both Mason and Taylor were 150 to 200 feet away from the parking lot, it was near dusk, neither witness observed the license plate number on the assailant's truck, and Mason was unable to identify Kee in a police line-up. Kee also notes that Mason and Taylor testified that the assailant was wearing a standard postal uniform, while Mrs. Crow testified that Kee was not wearing a postal uniform at the protective order hearing earlier that day. He further contends the physical evidence was insufficient to support the conviction because the search warrant failed to turn up any blood or glass fragments, and the officer who took the shoe print from the hood of Mrs. Kee's car could not testify, with any certainty, that the prints came from the shoes seized at Kee's residence.

Despite Kee's assertions, the evidence presented at trial was more than sufficient to conclude that Kee was the assailant. The morning of the assault, Mrs. Kee had obtained a full order of protection against Kee because he had previously threatened and assaulted her over their impending divorce. A mere fifteen minutes before the assault, Kee made a threatening telephone call to Mrs. Kee at her work. Immediately after the attack, Mrs. Kee repeatedly stated to her co-workers that her husband had stabbed her. Taylor identified Kee as the assailant from a police line-up and accurately described Kee's truck as a small, black Toyota or Nissan truck. The search of Kee's residence the day after the assault produced a black Toyota truck with damage to the front.

Also a pair of Rocky shoes seized from Kee's residence left prints consistent with the shoe print lifted from the hood of Mrs. Kee's car. Finally, Mason, although not able to identify Kee out of a police line-up, accurately described him as a tall, black, stocky male, wearing a postal employee uniform.[2] The foregoing evidence was sufficient for a reasonable juror to find that Kee assaulted Mrs. Kee.

■ Kee next argues that there was insufficient evidence to convict him of class A felony assault in the first degree because the State failed to prove that Mrs. Kee suffered serious physical injury. To find Kee guilty of class A felony first degree assault, the State was required to prove that Kee attempted to kill or cause serious physical injury to Mrs. Kee and that, as a result, she suffered serious physical injury. § 565.050.[3] Serious physical injury is "physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body." § 565.002(6).

■ "The question is whether the injuries inflicted in the assault, viewed objectively, are of a degree of severity sufficient to raise a legitimate concern either that the victim could expire or could suffer more than a momentary loss of a bodily function." *State v. Johnson,* 770 S.W.2d 263, 266 (Mo.App. W.D.1989). Kee stabbed his wife multiple times: once in her right jaw, five times in the right side of her neck, twice in her left chest, once in her left forearm, and once in her left hand. According to the emergency room physician attending to Mrs. Kee when she was first admitted to the trauma center, the wounds to her throat and chest were consistent with life-threatening injuries. "Substantial risk of death suggests circumstances which give rise to apprehension of life threatening consequences." *State v. Kruger,* 926 S.W.2d 486, 488 (Mo.App. E.D.1996). Mrs. Kee's survival of the assault does not render

2. Kee was an employee of the United States Postal Service.

3. Section 565.050 provides:
    1. A person commits the crime of assault in the first degree if he attempts to kill or knowingly causes or attempts to cause serious physical injury to another person.
    2. Assault in the first degree is a class B felony unless in the course thereof the actor inflicts serious physical injury on the victim in which case it is a class A felony.

her condition any less serious, nor does it negate the proposition that she could have life threatening consequences. *Johnson*, 770 S.W.2d at 266.

The State also adduced sufficient evidence to demonstrate serious disfigurement as a result of Kee's assault. "Disfigurement means to deface or mar the appearance or beauty of someone." *Kruger*, 926 S.W.2d at 488. The emergency room physician testified that when he saw Mrs. Kee, she had "apparent paralysis of the right side of her face consistent with facial nerve deficit." He opined that the paralysis was "probably a result of one of the stab wounds to her neck lacerating her right facial nerve." Mrs. Crow also testified that her daughter looks like a stroke victim because the right side of her face, including her right eyelid, hangs. She further testified that Mrs. Kee's neck and face were scarred from the wounds. The State presented sufficient evidence that Mrs. Kee suffered serious physical injury as a result of the assault. The conviction of class A felony assault in the first degree was supported by the evidence.

■ Finally, Kee contends there was insufficient evidence to convict him of armed criminal action because no evidence was adduced that a dangerous instrument was used in the commission of the assault. Kee argues that because neither eyewitness saw a weapon, the emergency room physician could not specifically identify the weapon used to inflict Mrs. Kee's injuries, and Mrs. Kee did not know what was used to stab her that the State did not establish the use of a dangerous weapon beyond a reasonable doubt.

To convict Kee of armed criminal action, the jury was required to find that the assault was committed with the use, assistance or aid of a dangerous instrument or deadly weapon. § 571.015.1.[4] "Dangerous instrument" includes "any instrument, article or substance, which, under the circumstances in which it is used, is readily capable of causing death or

other serious physical injury." § 556.061(9). Mrs. Kee was admitted to the trauma center with at least ten stab wounds. The emergency room physician testified they were short lacerations consistent with a short stabbing instrument. He further opined that the wounds were inflicted by a sharp instrument because the wound edges were lean and not ragged, with little tearing. From this evidence, a legitimate inference may be made that Mrs. Kee was stabbed with a sharp, knife-like object. The conclusion that a dangerous instrument was employed in the commission of the assault was, therefore, supported by sufficient evidence. Point denied.

Kee's second point contends the trial court erred in allowing the State to read into the record Mrs. Kee's testimony from her husband's bond hearing because the State failed to adequately establish that she was an unavailable witness. Kee argues the admission of her previous testimony deprived him of his constitutional right to confront and cross-examine his accuser and deprived the jury of the opportunity to evaluate her credibility.

■ The right of a defendant to confront and cross-examine a witness against him in criminal case is essential and fundamental to a fair trial. *State v. Lindsay*, 709 S.W.2d 499, 503–04 (Mo.App. W.D.1986). An exception exists, however, when a defendant had the opportunity to cross-examine an unavailable witness at a previous judicial proceeding against the defendant in the same matter. *State v. Taylor*, 742 S.W.2d 625, 628 (Mo.App. E.D.1988).[5] To demonstrate the unavailability of a witness, the State must show: (1) it made a good faith effort to obtain the witness, and (2) it exercised due diligence to secure the witness' presence. *State v. Sanders*, 903 S.W.2d 234, 237 (Mo. App. E.D.1995). Due diligence is evaluated on a case by case basis. *Id.*

■ The record reflects that Mrs. Kee testified about her assault, and the surround-

---

4. "Deadly weapon" includes "any firearm, loaded or unloaded, or any weapon from which a shot, readily capable of producing death or serious physical injury, may be discharged, or a switchblade knife, dagger, billy, blackjack or metal knuckles." § 556.061(10).

5. "The opportunity to cross-examine is indispensable to the exercise of the right, while the opportunity for the jury to observe the witness is an interest which gives way to considerations of necessity—as where the witness is unavailable." *Lindsay*, 709 S.W.2d at 504.

ing circumstances, at her husband's bond hearing on December 13, 1995. Although trial was set for March 11, 1996, the State did not realize Mrs. Kee was no longer cooperating with the prosecution until February 20, 1996, less than one month before trial. Prior to that date, she had been fully cooperative. On February 21st, after unsuccessfully attempting to reach Mrs. Kee by telephone, prosecutors left her a card at her residence. The next day, prosecutors received a response from Mrs. Kee indicating that she did not have a telephone and would be in contact with them. Mrs. Kee contacted prosecutors on February 23rd and agreed to meet with them on February 29, 1996. That was the last time either prosecutor had personal contact with Mrs. Kee, who did not show up for the scheduled appointment. Concerned for Mrs. Kee's safety, the prosecutors called both her mother and sister on February 29, March 1, and March 4, 1996. From these calls, they learned of Mrs. Kee's whereabouts and sent their private investigator to find her.

On March 6, 1996, the investigator spoke with Mrs. Kee's sister, who advised him that Mrs. Kee would be home that evening, but was scheduled to attend a Bible study. The investigator arrived at Mrs. Kee's apartment building about 5:00 p.m. that evening, parked his car in the street, and watched her building. During this time, he telephoned Mrs. Kee's sister at least four times and rang the bell to Mrs. Kee's apartment a number of times. Her sister told him that Mrs. Kee would not come to the door because she knew he was outside of her apartment.

At about 6:25 p.m., Mrs. Kee's sister paged the investigator and advised him that Mrs. Kee would be leaving her apartment shortly. As he was talking to her sister, the investigator saw Mrs. Kee exit the apartment building and get into her car. The investigator pulled his car in front of hers to keep her from leaving and turned his lights on bright. He exited his car, walked around to the rear, and held his hands up for her to stop. Instead, Mrs. Kee accelerated directly towards him, with no indication that she was going to stop, and he was forced to jump out of the car's path. She exited the parking lot, without turning on her headlights, and drove away. Immediately thereafter, the investigator telephoned the Kansas City Missouri Police Department to report Mrs. Kee for attempted assault. Although the police put out a bulletin for her arrest, no arrest had been made as of the first day of trial.

Between the 20th of February and trial, the prosecutors, themselves, twice attempted to serve Mrs. Kee with a subpoena at her son's school, and made at least five attempts to contact her by telephone.

Under the circumstances, the State exercised due diligence in locating Mrs. Kee. The trial court, therefore, did not err in reaching this conclusion. Moreover, Kee had the opportunity to, and did in fact, cross-examine his estranged wife at the bond hearing, during which she testified about the assault. Thus, the State met all elements necessary to fall within the "unavailability" exception. Accordingly, the trial court did not err in allowing Mrs. Kee's prior testimony to be read into evidence at trial.

In his third and final point, Kee claims the trial court plainly erred in not *sua sponte* declaring a mistrial during the State's closing argument. Substantial latitude is allowed during closing argument, and the trial court is vested with broad discretion in determining when counsel has exceeded the permissible scope of argument. *State v. Burnett*, 931 S.W.2d 871, 875 (Mo.App. W.D. 1996). "To be entitled to relief under the 'plain error' rule, a defendant must go beyond a showing of demonstrable prejudice to establish 'manifest prejudice' affecting substantial rights." *State v. Clark*, 913 S.W.2d 399, 405 (Mo.App. W.D.1996). Improper closing argument will justify reversal only where the defendant demonstrates that the argument had a decisive effect on the jury's determination. *Id.* In order to have a decisive effect, there must be a reasonable probability that, had the comments not been made, the verdict would have been different. *State v. Rosendahl*, 938 S.W.2d 274, 277 (Mo.App. W.D.1997). The defendant bears the burden of proof on this claim. *Id.* We rarely grant relief on assertions that the trial court erred in not *sua sponte* taking remedial action during closing argument. *State v. Chapman*,

936 S.W.2d 135, 139 (Mo.App. E.D.1996). Generally, such claims are denied without explanation. *Burnett*, 931 S.W.2d at 875.

■■■ Kee first takes issue with a portion of the State's argument, which he contends was an indirect comment on his failure to testify on his own behalf:

And the evidence in this case about what happened on that date was all the State's evidence. The only evidence that you heard about what happened on November 8, 1995, was the State's evidence; and you must make your conclusions and findings based upon the evidence, not some argument of counsel and not on something that may have happened later that date, but what happened on the day of the commission of this crime. And all of that evidence, every piece of evidence that the State called shows that this man committed this assault.

■■■ While it is improper for the State to make direct and certain references to the defendant's failure to testify, the prosecutor may comment on the defendant's failure to adduce evidence. *State v. Tolliver*, 839 S.W.2d 296, 300 (Mo. banc 1992). The challenged comments reference Kee's lack of evidence refuting the State's case and were, therefore, permissible. Moreover, even if it could be said the prosecutor's argument was improper, Kee has not demonstrated that the comments had a decisive effect on the jury such as to require relief under the plain error rule. *State v. Sidebottom*, 753 S.W.2d 915, 921 (Mo. banc 1988), *cert. denied*, 488 U.S. 975, 109 S.Ct. 515, 102 L.Ed.2d 550 (1988).

■■■ Kee next argues that the prosecutor made an unwarranted appeal to the sensibilities of the jury by impressing upon them their responsibility to protect the battered women of Jackson County:

Who's going to see that justice is done for Georgia Kee? ... You. It is your duty, as I see it, to see that the laws of the State of Missouri are upheld.... You're the ones that are going to say to what degree are women who are battered getting protection in Jackson County.

According to Kee, these remarks unfairly aroused personal hostility toward him, and inflamed the passions and prejudices of the jury.

"A prosecutor is permitted to argue general propositions regarding the prevalence of crime in the community, the personal safety of the community's citizens and the jury's duty to uphold the law including inferences regarding the jury's failure to convict and pleas to the jury's common experience." *State v. Lumpkin*, 850 S.W.2d 388, 395 (Mo. App. W.D.1993). Moreover, the law in Missouri has long permitted the State to argue to the jury that the protection of the public rests with them. *Sanders*, 903 S.W.2d at 239. The contested comments clearly fall within these parameters.

■■■ Finally, Kee contends the prosecutor improperly commented on Mrs. Kee's absence from the trial and her election not to testify. Kee relies on § 546.270 and Rule 27.05(a) to support his contention. Section 546.270 and Rule 27.05(a) both prohibit a direct reference to a defendant's spouse's failure to testify. *State v. Smith*, 772 S.W.2d 760, 763 (Mo.App. W.D.1989). In this regard, the following exchange took place at trial:

Prosecutor: You know, I'm sorry that Georgia Kee isn't here and we need to talk about that a little bit. There's two reasons that I can think of that she wouldn't be here. She's scared to death, number one.

Defense Counsel: Your Honor.

Prosecutor: Which she had a right to be under this evidence.

Defense Counsel: I'm going to object, Your Honor. I believe that counsel is going beyond what is appropriate in discussing.

The Court: Objection sustained. You are going beyond the evidence in the case.

Prosecutor: It's a reasonable inference from her not being here.

The Court: We don't know why she's not here.

Prosecutor: That's right. I'm entitled to speculate.

The Court: Objection sustained.

Defense counsel objected to the improper argument and the trial court sustained the objection. Defense counsel did not ask the

court to declare a mistrial or provide any other relief than to sustain the objection. The court did precisely what Kee's attorney requested. When a trial court sustains an objection to improper argument and the objecting party fails to request further remedial action at that time, no error is preserved for appellate review. *State v. Fleischer*, 873 S.W.2d 310, 316 (Mo.App. S.D.1994); *McMillin v. Union Elec. Co.*, 820 S.W.2d 352, 355 (Mo.App. W.D.1991). Thus, having been granted all the relief requested, Kee has preserved nothing for review on this issue. Moreover, gratuitous plain error review reveals no manifest injustice. As noted, *supra*, improper closing argument will justify reversal only where the defendant demonstrates that the argument had a decisive effect on the jury's determination. *State v. Clark*, 913 S.W.2d at 405. In this case, the evidence against Kee was strong and there is no indication in the record that the improper remarks of the prosecutor had any effect, much less a decisive effect, on the jury's verdict. The trial court did not plainly error in failing to *sua sponte* declare a mistrial as a result of the State's closing argument. Point denied.

The judgment is affirmed.

All concur.