

# In the Missouri Court of Appeals
# Eastern District

## DIVISION TWO

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED111484 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Charles County |
| vs. | ) | |
| | ) | Honorable Daniel G. Pelikan |
| KEITH L. JOHNSON, JR., | ) | |
| | ) | |
| Appellant. | ) | FILED: February 20, 2024 |

Keith L. Johnson, Jr. appeals the judgment entered after a jury trial on his convictions for the class A felony of assault in the first degree and for the associated crime of armed criminal action. Both convictions were based on evidence that Johnson knowingly caused serious physical injury to the victim by shooting him in the forearm. According to Johnson, there was insufficient evidence that the victim actually sustained a "serious physical injury" as defined by section 556.061(44),[1] which is required to elevate the first-degree assault to a class A felony under section 565.050.2. We disagree and affirm the convictions. We must, however, vacate Johnson's sentence on his armed criminal action conviction and remand for resentencing because the trial court plainly erred in imposing that sentence based on a mistaken belief as to the mandatory minimum term of imprisonment for that offense.

---

[1] All statutory references are to RSMo (2016), unless otherwise indicated.

**Factual and Procedural Background**

Johnson shot the victim in the parking lot of a nightclub. The victim sustained two gunshot wounds, one to his right forearm and the other to his right hip. The injury to the victim's hip was a graze wound, but his forearm wound was "through-and-through," meaning the bullet went through the victim's arm. After the shooting, the victim ran into the nightclub, leaving a trail of blood from the parking lot to the inside of the building. According to the crime scene investigator, there was "a lot of blood" on the parking lot and the carpet inside the nightclub, and the victim's pants were soaked with blood. When paramedics arrived, the victim was sitting on a stool outside the nightclub, and a police officer was holding a tourniquet in place around the victim's forearm. The victim was alert and able to speak.

The arm wound was still actively bleeding as the paramedics started treating him in the ambulance. The paramedics removed the tourniquet, which was controlling the bleeding, although it had been improperly applied. They bandaged his forearm with gauze "to control the bleeding that was still happening." One of the paramedics testified at trial that the gunshot wound was a "significant injury" with "significant" bleeding and that "[a] person could die from an injury like this without medical intervention." The paramedic added that the wound itself could become infected and lead to death.

The victim's vital signs were normal except for mild hypotension, which was cause for concern. The paramedic testified that "[o]nce blood pressure drops, it can cause the body not to get proper blood flow to the heart, to the brain, vital structures" and that "[i]f it drops far enough, it could potentially cause death." The paramedics treated the victim's hypotension with intravenous fluid to increase his blood pressure. About ten minutes later, the victim's blood pressure was still mildly hypotensive, but was improving.

Although there was a hospital in the same parking lot as the nightclub, the paramedics took the victim by ambulance to a hospital twenty minutes away because it had a trauma center and the victim had suffered a "traumatic injury." The paramedics did not turn on the lights or sirens of the ambulance on the way to the hospital because the victim's vital signs were improving after their intervention. When they arrived at the hospital, the paramedics transferred the victim's care to the doctors and nurses in the emergency room. There was no evidence presented about the victim's condition after he arrived at the hospital.

The trial court gave the jury three alternative instructions regarding assault. The first instruction informed the jury that if it found Johnson knowingly caused "serious physical injury," then it was required to find him guilty of first-degree assault under that instruction. The second instruction told the jury that if it did not find Johnson guilty under the first instruction, and instead found that he only attempted to cause "serious physical injury," then it was required to find him guilty of first-degree assault under the second instruction. Finally, the third instruction provided that if the jury did not find Johnson guilty of first-degree assault under either of the first two instructions, and instead found that he caused only a "physical injury" to the victim, then it was required to find Johnson guilty of second-degree assault. "Serious physical injury" was defined in these instructions as it is in section 556.061(44): a physical injury that (1) "creates a substantial risk of death" or (2) "causes serious disfigurement" or (3) causes "protracted loss or impairment of the function of any part of the body." The jury found Johnson guilty of first-degree assault as laid out in the first instruction; it also found him guilty of the associated count of armed criminal action.

At sentencing, defense counsel presented evidence in an effort to convince the trial court to place Johnson on probation or, alternatively, to sentence him to the statutory minimum term of

imprisonment. The State did not seek any specific sentence, asking the trial court to impose the punishment it thought was "fair." Johnson expressed remorse and apologized for his conduct while maintaining that he fired the shots in self-defense. He emphasized that he lawfully possessed the firearm he used the night of the shooting. Johnson pleaded with the trial court to not sentence him to prison and let him remain with his family. In response, the trial court stated:

> [A]s much as I want to help you and your daughter and your family, my hands are tied. The most I can do for you is give you the minimum, the statutory minimum. There's no opportunity for probation.
>
> [ . . . .]
>
> And I think you're a good person, but I have to do what the law requires. There's nothing I can do.

The record shows that defense counsel, the prosecutor and the trial court all believed that the applicable mandatory minimum sentence for armed criminal action in this case was five years. The trial court sentenced Johnson to ten years in prison for first-degree assault and a consecutive five years in prison for armed criminal action. The parties now agree that the applicable mandatory minimum sentence for armed criminal action for a defendant like Johnson—who lawfully possessed the weapon used in the underlying crime—is actually three years in prison. *See* section 571.015.1 RSMo (Cum. Supp. 2020).

**Discussion**

In his first and third points on appeal, Johnson challenges the sufficiency of the evidence that the victim sustained a "serious physical injury" as required to support his convictions for first-degree assault and armed criminal action based on that assault. Johnson's second point contends the trial court plainly erred in imposing a five-year sentence for armed criminal action because it was based on the trial court's mistaken belief as to the applicable mandatory minimum sentence for that offense.

4

*Points I and III – Sufficiency of the Evidence*

We review a sufficiency of the evidence challenge to determine whether there was evidence from which a reasonable juror could have found the defendant guilty beyond a reasonable doubt. *State v. Madrigal*, 652 S.W.3d 758, 766 (Mo. App. E.D. 2022). "We view the evidence and all reasonable inferences in the light most favorable to the verdict, disregarding any evidence and inferences contrary to the verdict." *Id.*

To sustain Johnson's conviction for the class A felony of first-degree assault, there must have been sufficient evidence that he inflicted "serious physical injury" on the victim. *See* section 565.050.2. As noted, a "serious physical injury" includes an injury that "creates a substantial risk of death." Section 556.061(44). Our courts have held that risk of death is something less than a probability or even a likelihood; it suggests circumstances that *could* give rise to life-threatening consequences. *Madrigal*, 652 S.W.3d at 768; *State v. Kruger*, 926 S.W.2d 486, 488 (Mo. App. E.D. 1996). The question is whether an injury raises a legitimate concern that it could cause death. *Kruger*, 926 S.W.2d at 488.

Here, the evidence showed that the gunshot wound to the victim's forearm caused significant bleeding. While the victim's other vital signs were normal, his blood pressure was low. Left untreated, the victim could have bled to death or died from hypotension.[2] Johnson does not dispute this evidence but instead argues that the victim's life was never actually in jeopardy because he received prompt and appropriate medical treatment. Johnson stresses that the paramedics did not use the ambulance's emergency signals while driving to the hospital because

_____

[2] All of this evidence came from the testimony of the paramedic who treated the victim, distinguishing this case from *State v. Nguyen*, 880 S.W.2d 627, 635-36 (Mo. App. W.D. 1994), *overruled on other grounds by State v. Driver*, 912 S.W.2d 52 (Mo. banc 1995). In *Nguyen*, the appellate court found that the evidence was insufficient to show that a gunshot wound created a substantial risk of death because the State did not offer any medical testimony or records regarding the severity of the injury, only the testimony of a lay witness that she thought the victim was "dead" and was taken to the hospital "in critical[.]" *Id.*

the victim's bleeding was under control and his blood pressure was stabilizing by that time. But the fact that the victim was fortunate enough to receive timely and effective intervention that diminished the possibility of death does not mean he was *never* at risk of dying from this injury. And the fact that the victim survived the assault does not negate the evidence that his injury *could* have been life-threatening. *See, e.g.*, *id.* Viewed favorably to the verdict, the evidence in this case could have led a reasonable juror to conclude beyond a reasonable doubt that the gunshot wound to the victim's forearm was a "serious physical injury" because it created "a substantial risk of death." *See* section 556.061(44). Therefore, we need not address whether there was sufficient evidence for the victim's gunshot wound to qualify as a "serious physical injury" under the other two parts of the statute's definition of that term, namely, "serious disfigurement" or "protracted loss or impairment of the function of any part of the body." *See id*.

In sum, there was sufficient evidence to support Johnson's conviction for the class A felony of first-degree assault and the accompanying armed criminal action conviction based on that felony. Points I and III are denied.

### *Point II – Sentencing Error*

In his second point on appeal, Johnson contends the trial court plainly erred in sentencing him to five years in prison for armed criminal action based on the mistaken belief that five years was the applicable statutory mandatory minimum term of imprisonment for that offense, when the actual minimum sentence was three years since Johnson lawfully possessed the weapon used in the crime. We agree.

To grant relief under the plain error rule, the alleged error must so substantially affect the rights of the defendant that a manifest injustice or miscarriage of justice would result if left uncorrected. *State v. Pierce*, 548 S.W.3d 900, 904 (Mo. banc 2018). Such a manifest injustice

6

occurs if the trial court imposes a sentence based on a mistaken belief about the applicable law and not on any other valid considerations unaffected by that misunderstanding. *Id.* at 904-06. It is not enough that the trial court *held* the mistaken belief, it must have *based* the sentence on that belief. *See id.* In such a situation, we must reverse and remand for reconsideration of the sentence based on the correct law. *See id.*; *see also Wraggs v. State*, 549 S.W.2d 881, 884 (Mo. banc 1977) ("A sentence passed on the basis of a materially false foundation lacks due process of law and entitles the defendant to a reconsideration of the question of punishment in the light of the true facts, regardless of the eventual outcome."). As the State concedes, the record here clearly shows that the sentence imposed was based solely on the trial court's misunderstanding of the applicable minimum sentence required for Johnson's armed criminal action conviction.

The armed criminal action statute mandates the imposition of a term of imprisonment "of not less than three years and not to exceed fifteen years, unless the person is unlawfully possessing a firearm, in which case the term of imprisonment shall be for a term of not less than five years." Section 571.015.1 RSMo (Cum. Supp. 2020). It is undisputed that Johnson lawfully possessed the firearm used in the underlying assault. Therefore, as the parties now agree, the applicable statutory minimum sentence for Johnson's armed criminal action conviction was three years in prison. The trial court expressly stated its intention to give Johnson the statutory minimum, and it is abundantly clear that the trial court imposed the five-year sentence on the armed criminal action conviction based on the mistaken belief that it was the minimum term mandated by the statute. Nothing in the record suggests that the five-year sentence was based on anything other than this misunderstanding. If left uncorrected, this sentence would result in a manifest injustice to Johnson. *See Pierce*, 548 S.W.3d at 904-06. Therefore, we must vacate Johnson's sentence on his armed criminal action conviction and remand for resentencing. Point II is granted.

## Conclusion

The judgment entered on the convictions for first-degree assault and armed criminal action is affirmed. The sentence on the armed criminal action conviction is vacated, and the case is remanded for resentencing on that conviction only.

_____
MICHAEL E. GARDNER, Judge


Kurt S. Odenwald, P.J., concurs.
Renée D. Hardin-Tammons, J., concurs.

8